FILED

U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXARKANA**
**TEXARKANA DIVISION**

NOV 1 7 2010

DAVID J. MALAND, CLERK
BY
DEPUTY_____

| | |
|---|---|
| **KEITH DUNBAR, Individually, and as Representative on Behalf of all Similarly Situated Persons,**<br><br>　　　　**Plaintiff,**<br>　**versus**<br><br>**GOOGLE, INC.**<br><br>　　　　**Defendant.** | **Civil Action Nº** 5 1 0 C V  1 9 4<br><br>**CLASS ACTION COMPLAINT** |

PLAINTIFF, KEITH DUNBAR, Individually and on behalf of the Class described below ("the Class"), brings this nationwide Class Action suit against Defendant Google, Inc. ("Google"), and upon information and belief, alleges the following:

## PARTIES

1.　　PLAINTIFF is a citizen of the State of Texas, and he resides in Bowie County, Texas, which is within the Eastern District of Texas, Texarkana, Division.

2.　　Google is a Delaware corporation, whose principal place of business is at 1600 Amphitheatre Parkway, Mountain View, County of Santa Clara, State of California.  Google may be served through its agent for service of process: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

3.　　Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over the Plaintiff's and the Class' claims arising under the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510 *et seq.,* a law of the United States.

4.　　This Court has general and specific personal jurisdiction over the Defendant, in that Defendant has sufficient minimum contacts within the State of Texas and within the Eastern District of Texas, and further because certain material acts upon which this suit is based occurred within the

Eastern District of Texas.

5.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) in that: (1) Google resides in the Eastern District of Texas because it is subject to personal jurisdiction within the Eastern District of Texas; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Google may be found in this district.

## NATURE OF SUIT

6.     Pursuant to Rule 23 of the *Federal Rules of Civil Procedure*, Plaintiff brings this nationwide class action lawsuit against Google for the unlawful and intentional interception and use of electronic communications in violation of the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. Sections 2510 *et seq.*   Google operates a popular email service known as "Gmail."  Gmail account holders are assigned Gmail email addresses to send and receive information. Google scans the content of all emails received by Gmail account holders.  Through this scanning, Google intercepts all emails sent to Gmail account holders that are sent from any sender.  Google uses the information obtained from the scanning of incoming emails in order to sell and place advertisements on Gmail account holders' user screens.  This case involves the interception of the emails from non-Gmail account holders ("the Class") in violation of 18 U.S.C. § 2511(1)(a).  It also involves the use by Google of information obtained from emails sent by non-Gmail account holders in violation of 18 U.S.C. § 2511(1)(d).   While Google states that it does not disclose this information to third parties, Google admits that it not only intercepts and scans all emails of Gmail account holders, Google admits that it uses the information obtained from non-consenting, non-Gmail account holders to sell and place advertisements on the Gmail users' screens.  Google intercepts and uses the information from non-Gmail account holders without regard to the private or proprietary nature of the information. As result of Google's actions in intercepting non-Gmail account holders' emails, Google obtains a monetary benefit without the consent of the Class members and without compensation to them.  As a result of Google's use of information obtained from non-Gmail account holders, Google obtains a

monetary benefit without the consent of the Class members and without compensation to them.

## STATEMENT OF FACTS

7.     Google owns the world's leading internet search engine and offers a vast array of free services to internet users. In order to offer free services to internet users, Google generates the majority of its revenues by selling online advertising. The more users or usage through Google services that can be demonstrated by Google to advertisers, the more revenue Google makes.

8.     As part of its business model, Google actively seeks out, collects, and stores vast amounts of information regarding internet users. To Google, the acquisition, storage, and ready access to information directly correspond to revenues. As such, Google's business model, utilizing its proprietary technology and algorithms, requires it to continue to acquire additional information. Personalized and detailed information is very valuable to Google.

9.     "Gmail" is one such free service offered by Google. Google states that Gmail is the "best and most useful webmail service in the world." Gmail is a free webmail service offered to Gmail account holders. Gmail account holders are assigned a Gmail email address for the purposes of sending and receiving email. Gmail account holders can receive emails from other Gmail account holders and from non-Gmail account holders.

10.     In order to obtain a Gmail account, a person must agree to the Google Terms of Service, the Google Program Policy, and the Google Privacy Policy. The Google Terms of Service include:

   a.  An agreement by the account holder that the Google Services will only be used for purposes permitted by law, regulation, or generally accepted practices or guidelines;

   b.  An agreement by the account holder that he or she will not access any of the Google Services by any means other than through the interface provided by Google;

   c.  A specific statement by Google regarding its data protection practices and a reference to its privacy policy at http://www.google.com/privacy.html. Google states that this policy governs how Google treats the personal information of the applicant

and account holder and how Google protects the privacy of the Gmail account holder.

d.  A statement by Google that the advertisements it offers within the Google Services may be protected by the advertisers who provide the content to Google;

e.  An agreement by the account holder to give Google a non-exclusive license to only those matters submitted, posted, or displayed through the Google Services by the account holder; and

f.  A statement by Google that some of its services are supported by advertising revenue and display advertisements and promotions may be contained in those services. Google further states that these advertisements may be targeted to the content of information stored on the Google Services, queries made through the Google Services or other information.

11.   Google's Terms of Service does not contain any provision regarding the receipt and use of information sent from non-Gmail account holders.

12.   Google's Terms of Service does not contain an acknowledgement of consent by Gmail account holders to the interception by Google of emails sent by non-Gmail account holders.

13.   Google's Terms of Service does not contain an acknowledgment of consent by Gmail account holders for Google to use information obtained from non-Gmail account holders' emails.

14.   Google's Terms of Service does not contain an acknowledgment of consent by Gmail account holders to allow Google access and use to the content of non-Gmail account holders' emails.

15.   The Google Program Policy specifically forbids a Gmail account holder from using Gmail to violate the legal rights (such as rights of privacy and publicity) of others.

16.   The Google Program Policy does not contain an acknowledgement of consent by Gmail account holders to the interception by Google of emails sent by non-Gmail account holders.

17.   Google's Program Policy does not contain an acknowledgment of consent by Gmail

account holders for Google to use information obtained from non-Gmail account holders' emails.

18.    Google's Program Policy does not contain an acknowledgment of consent by Gmail account holders to allow Google access and use to the content of non-Gmail account holders' emails.

19.    The Google Privacy Policy does not contain an acknowledgement of consent by Gmail account holders to the interception by Google of emails sent by non-Gmail account holders.

20.    Google's Privacy Policy does not contain an acknowledgment of consent by Gmail account holders for Google to use information obtained from non-Gmail account holders' emails.

21.    Google's Privacy Policy does not contain an acknowledgment of consent by Gmail account holders to allow Google access and use to the content of non-Gmail account holders emails.

22.    Separate and apart from the Privacy Policy for which Gmail users are required to accept when establishing a Gmail account, Google admits many of the necessary facts forming the basis of this suit  in its statement entitled "More on Gmail and privacy," which provides:

    a.    "In personal email communications, there has always been, and always should be, an expectation of privacy between the sender and the intended recipients of a message, enabling open communication with friends, colleagues, family, and others." Google recognizes and admits the existence of an expectation of privacy that exists between a sender of an email and the intended recipient of an email.

    b.    "Privacy is compromised, however, if personal information or private email content is shared with parties other than the sender and intended recipients without their consent."  Google recognizes and admits that the use of private email content, for which an expectation of privacy exists, by anyone other than the sender and the recipient of that email would be a compromise of privacy.  Google, however, chooses not to consider itself as one of the "parties other than the sender and intended recipient[]."

    c.    "All major fee webmail services carry advertising, and most of it is irrelevant to the

people who see it.  Google believes that showing relevant advertising offers more value to users than displaying random pop-ups or untargeted banner ads.  In Gmail, users will see text ads and link to related pages that are relevant to the content of their messages."  Google recognizes and admits that the ability to offer advertising related to the content of personal email communications between a sender and a recipient has commercial value.  Google sets itself apart from its competitors by offering targeted advertising based upon email content versus "irrelevant" advertising from other webmail services.  In addition, Google only advises its users that they will see text ads and links related to "their messages," not non-Gmail account holders.

d.  "By offering Gmail users relevant ads and information related to the content of their messages, we aim to offer users a better webmail experience.  For example, if you and your friends are planning a vacation, you may want to see news items or travel ads about the destination you're considering."  Google only advises its users that relevant ads and information will be derived from the content of "their messages," not non-Gmail account holders.  Google further recognizes and admits that the ability to offer advertising related to the content of personal email communications between a sender and a recipient has commercial value.  Google sets itself apart from its competitors by offering "a better webmail experience" through targeted advertising based upon email content.

e.  "All email services scan your email.  They do this routinely to provide such popular features as spam filtering, virus detection, search, spellchecking, forwarding, auto-responding, flagging urgent messages, converting incoming email into cell phone text messages, automatic saving and sorting into folders, converting text URL's to clickable links, and reading messages to blind.  These features are widely accepted,

trusted, and used by hundreds of millions of people every day." Google admits that the commercial standard or common practice within the industry as to incoming email is limited to certain controls, not uses of the information for commercial purposes.

f.  "Google scans the text of Gmail messages in order to filter spam and detect viruses, just as all major webmail services do. **Google also uses this scanning technology to deliver targeted text ads and other related information. This is completely automated and involves no humans."** (Emphasis added). Google admits that it uses scanning technology to scan the emails of non-Gmail account holders. Google admits that it exceeds the commercial standard or common practice of other email services as to non-Gmail account holders. Google admits that it uses the information derived from non-Gmail account holders for a commercial purpose of delivering targeted text ads and other related information to Gmail users. While Google states that no humans scan the emails, Google admits that its proprietary technology scans the emails of non-Gmail account holders for commercial purposes of delivering targeted text ads and other related information. Accordingly, Google admits that the information taken from non-Gmail account holders' email has commercial value.

g.  "It is important to note that the ads generated by this matching process are dynamically generated each time a message is opened by the user—in other words, Google does not attach particular ads to individual messages or to users' accounts." Google admits that it scans the contents of non-Gmail account holders' emails to Gmail account holders each time a message is opened, thereby, effectuating multiple scans of a non-Gmail account holder's email. Google admits that it uses the contents of non-Gmail account holders' emails each time a message is opened, thereby, effectuating multiple uses of a non-Gmail account holder's email.

h.  "Some people have expressed the concern that Gmail may compromise the privacy of those who send email messages to Gmail accounts, since the senders have not necessarily agreed to Gmail's privacy policies or Terms of Use.  Though it may seem plausible at first, this worry is based on a misunderstanding of how Gmail actually works, and ignores the fact that for senders and recipients alike, there is no privacy violation to begin with.  Using Gmail does not violate the privacy of senders since no one other than the recipient is allowed to read their email messages, and no one but the recipient sees targeted ads and related information."  While Google admits that it uses the contents of non-Gmail account holders' emails, Google chooses not to consider itself someone other than the sender or recipient.  Further, Google misstates the applicable law to its Gmail account holders.

i.  "By choosing to use Gmail, users are seeing ads and related information that they could easily find by doing a web search using some of the keywords in their email. Google is simply presenting this information to them in a relevant and unobtrusive manner, while saving users the extra step of having to type keywords into a search engine;"  Again, Google limits its statement to what the Gmail users will see from the content of "their email."; and

j.  "Google keeps multiple backup copies of users' emails so that we can recover messages and restore accounts in case of errors or system failure, for some limited periods of time.  Even if a message has been deleted or an account is no longer active, messages may remain in our backup systems for some limited period of time."  Google admits that information related to this Class is readily available.

23.    Google uses proprietary technology and algorithms to scan the email of non-Gmail account holders for the purposes of delivering targeted text ads and other related information to Gmail users.  Google's proprietary technology and algorithms are created, operated, and maintained by

Google and its employees for purposes of its business model, its desire to accumulate information, and used as a tool to make money for Google.

24.     Google uses proprietary technology and algorithms to use the information derived from the email of non-Gmail account holders for purposes of delivering targeted text ads and other related information to Gmail users.  Google's proprietary technology and algorithms are created, operated, and maintained by Google and its employees for purposes of its business model, its desire to accumulate information, and as a tool to make money.

25.     On June 18, 2009, Nicole Wong, Deputy General Counsel for Google, testified before a House subcommittee on the potential privacy implication of behavioral advertising and in regard to the scanning of non-Gmail account holders' email and use of that information stated:

> MR. SCALISE:      Do you read e-mails from people that are a Yahoo! or Google e-mail subscriber?  Do you read through those e-mails to gather information in any way? . . . .
>
> MS. WONG: Yes.  We are using that same technology that scans for viruses and also scans for spam.  It is basically technology that looks for pattern text, and we use that not only for the spam blocking and viruses but also to serve ads within the Gmail user's experience so importantly like the—
>
> MR. SCALISE:      So if two people are exchanging an e-mail about a sporting event and they are talking about going to the game and then maybe they are going to want to go out for a drink afterwards, could they then maybe expect to get an advertisement about which different bars are offering specials after the game?
>
> MS. WONG: They won't get an e-mail with an advertisement but only the Gmail user will be able to see ads that shows up just like they show up on the side of our search results that are key to specific words—they are key words just as if you typed them into our browser that are calling from our repository of millions of ads to deliver an ad that is targeted to the content that you are reading.

26.     Google scans the contents of non-Gmail account holders' emails to Gmail account holders in order to "deliver targeted text ads and other related information" to Gmail account holders.

27.     Google uses the results of the scanning of the contents of non-Gmail account holders' emails in order to "deliver targeted text ads and other related information" to Gmail account holders.

28.     No consent from non-Gmail account holders is given prior to Google scanning the

content of non-Gmail account holders for the purpose of delivering targeted text ads and other related information to Gmail account holders.

29.    No consent from non-Gmail account holders is given prior to Google using the content of non-Gmail account holders for the purpose of delivering targeted text ads and other related information to Gmail account holders.

30.    Google does not inform non-Gmail account holders that it scans the content of their emails for the purpose of delivering targeted text ads and other related information to Gmail account holders.

31.    Google does not inform non-Gmail account holders that it uses the content of their emails for the purpose of delivering targeted text ads and other related information to Gmail account holders.

32.    Google does not compensate non-Gmail account holders for the scanning of the content of their emails for the purpose of delivering targeted text ads and other related information to Gmail account holders.

33.    Google does not compensate non-Gmail account holders for the use of the content of their emails for the purpose of delivering targeted text ads and other related information to Gmail account holders.

34.    Google does not provide services to non-Gmail account holders in exchange for the scanning of the content of their emails for the purpose of delivering targeted text ads and other related information to Gmail account holders.

35.    Google does not provide services to non-Gmail account holders in exchange for the use of the content of their emails for the purpose of delivering targeted text ads and other related information to Gmail account holders.

36.    Google's scanning of non-Gmail account holders' emails for the purpose of delivering targeted text ads and other related information to Gmail account holders provides a financial gain to

Google.

37.   Google's use of information from non-Gmail account holders' emails for the purpose of delivering targeted text ads and other related information to Gmail account holders provides a financial gain to Google.

38.   Upon information and belief, Google's use of scanned emails from non-Gmail account holders and the information derived thereof is not limited to targeted text ads and other related information provided to Gmail account holders on the user screens when emails are opened.   On September 24, 2010, Eric Schmidt, CEO of Google, stated to Charlie Rose, on the PBS television network:

> CHARLIE ROSE:     So how do you see the challenge from Facebook and social networking?
>
> ERIC SCHMIDT:     Well, social networking is important, and Facebook is a consequential and very impressive company.  And social information will be used by Google and by others, I should add, to make the quality of the results, the quality of the experience that much better.  The more we know about what your friends do—with your permission, and I need to say that about 500 times—we can actually use that to improve the experience that you have of getting information that you care about.
> In our case, what we're actually doing is building social information into all of our products.  So it won't be a social network the way people think of Facebook, but rather social information about who your friends are, people that interact with, and we have various ways in which we will be collecting that information[1] . . . .
>
> CHARLIE ROSE:     But at the same time, people are saying, for example, in e-commerce—it is more likely you want to be served by the opinions of ten friends than you are a Google Search.
>
> ERIC SCHMIDT:     Well, so far the evidence is that Google search is doing very well.  So if that's the future, we'll see.
>
> We can certainly make our advertising much more effective to the degree we have more information about who your friends are—and, again, with your permission, we can tie that in.

39.   Upon information and belief, the scanning of content of non-Gmail account holders'

---

[1] Mr. Schmidt's words were either a prediction or confession of what Google was doing, as evidenced by the recent announcement of Google's settlement with a class of Google Buzz Gmail participants (Google's social network) in *In Re Google Buzz User Privacy Litigation*, Case No. 5:10-CV-00672-JW, In the United States District Court for the Northern District of California, San Francisco Division.

emails provides Google with another source of information.

40.    Upon information and belief, the information derived from the scanning of content of non-Gmail account holders' emails has value to Google.

41.    Upon information and belief, the information derived from the scanning of content of non-Gmail account holders is used by Google not only for its Gmail services but for other "profit purposes" as well.

42.    No consent from non-Gmail account holders is given prior to Google scanning the content of non-Gmail account holders for profit purposes beyond targeted text ads and other related information to Gmail account holders.

43.    No consent from non-Gmail account holders is given prior to Google using the information derived from the scanning of the content of non-Gmail account holders for profit purposes beyond targeted text ads and other related information to Gmail account holders

44.    Google does not inform non-Gmail account holders that it scans the content of their emails for profit purposes beyond delivering targeted text ads and other related information to Gmail account holders.

45.    Google does not inform non-Gmail account holders that it uses the content of their emails for profit purposes beyond delivering targeted text ads and other related information to Gmail account holders.

46.    Google does not compensate non-Gmail account holders for the scanning of the content of their emails for profit purposes beyond delivering targeted text ads and other related information to Gmail account holders.

47.    Google does not compensate non-Gmail account holders for the use of the content of their emails for the profit purposes beyond delivering targeted text ads and other related information to Gmail account holders.

48.    Google does not provide services to non-Gmail account holders in exchange for the

scanning of the content of their emails for profit purposes beyond delivering targeted text ads and other related information to Gmail account holders.

49.    Google does not provide services to non-Gmail account holders in exchange for the use of the content of their emails for profit purposes beyond delivering targeted text ads and other related information to Gmail account holders.

50.    Google's scanning of non-Gmail account holders' emails for profit purposes beyond delivering targeted text ads and other related information to Gmail account holders provides a financial gain to Google.

51.    Google's use of information from non-Gmail account holders' emails for profit purposes beyond delivering targeted text ads and other related information to Gmail account holders provides a financial gain to Google.

52.    Within the Class Period, Plaintiff has sent e-mails to Gmail account holders from non-Gmail email accounts.

53.    At the time Plaintiff sent the emails to Gmail account holders, Plaintiff did so from non-Gmail email accounts.

54.    Google intercepted and scanned the content of Plaintiff's e-mails to Gmail account holders for the purpose of delivering targeted text ads and other information to the Gmail account holder and for Google's commercial gain.

55.    Google intercepted and used the content of Plaintiff's emails sent to Gmail account holders for the purpose of delivering targeted text ads and other information to the Gmail account holder and for Google's commercial gain.  In one specific instance and based solely on the content of Plaintiff's email, when Plaintiff's email was received by the Gmail account holder, links to competing businesses were provided for viewing by the Gmail account holder.

56.    Plaintiff did not consent to Google's scanning or use of the content of Plaintiff's emails to Gmail account holders for the purpose of delivering targeted text ads and other information to the

Gmail account holder.

57.    Google's scanning of the content of Plaintiff's emails or the use of the information derived thereof for the purpose of delivering targeted text ads and other related information to the Gmail account holder provided a financial gain to Google.

58.    Google did not compensate Plaintiff for the scanning of the content of Plaintiff's email or the use of the content of Plaintiff's email for the purpose of delivering targeted text ads and other related information to the Gmail account holder.

59.    Upon information and belief, Google scanned the content of Plaintiff's e-mails to Gmail account holders for a profit purpose beyond delivering targeted text ads and other information to the Gmail account holder.

60.    Upon information and belief, Google used the content of Plaintiff's emails sent to Gmail account holders for a profit purpose beyond delivering targeted text ads and other information to the Gmail account holder.

61.    Plaintiff did not consent to Google's scanning or use of the content of Plaintiff's emails to a Google account holders for profit purposes beyond delivering targeted text ads and other information to the Gmail account holder.

62.    Upon information and belief, Google's scanning of the content of Plaintiff's emails or the use of the information derived thereof for profit purposes beyond delivering targeted text ads and other related information to the Gmail account holders provided a financial gain to Google.

63.    Google did not compensate Plaintiff for the scanning of the content of Plaintiff's emails or the use of the content of Plaintiff's emails for profit purposes beyond delivering targeted text ads and other related information to the Gmail account holders.

## CLASS ALLEGATIONS

64.    PLAINTIFF brings this nationwide class action, pursuant to Rule 23 of the *Federal Rules of Civil Procedure*, individually and on behalf of all members of the following Class. The Class

consists of:

> All persons located within the United States who sent emails from a non-Gmail account email address to a Gmail account e-mail address from within two years before the filing of this action up through and including the date of the judgment in this case (hereafter, the "Class")

Excluded from the class are the following individuals and/or entities:

a. Any and all federal, state, or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

b. Individuals or entities, if any, who timely opt out of this proceeding using the correct protocol for opting out;

c. Individuals or entities, if any, who have previously settled or compromised claims(s) as identified herein for the class; and

d. Any currently sitting federal judge and/or person within the third degree of consanguinity to any federal judge.

## A. Numerosity

65.     The Class is so numerous that joinder of all members is impracticable.    Upon information and belief, while official numbers do not appear to be available from Google, Plaintiff alleges the number of Gmail account holders has been reported as high as 91.6 million users. Correspondingly, Plaintiff alleges the numbers for the Class are in the millions.

## B. Commonality

66.     There are questions of law or fact common to the class.    These questions include, but are not limited to, the following:

a. Whether Google intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept electronic communications in the form of email through its Gmail accounts;

b. Whether Google's scanning of the contents of Class members' emails for the purpose of delivering targeted text ads and other related information to Gmail account holders is intentional;

c. Whether Google's scanning of the contents of Class members' emails for the purpose of delivering targeted text ads and other related information to Gmail account holders amounts to an interception of electronic communication;

d.  Whether Google's scanning of the contents of Class members' emails for the purpose of delivering targeted text ads and other related information to Gmail account holders is an endeavor to intercept electronic communication;

e.  Whether Google, through its Gmail service, is procuring Gmail account holders to intercept or endeavor to intercept electronic communications from Class members;

f.  Whether Google scans the contents of Class members' emails for purposes beyond delivering targeted text ads and other related information to Gmail account holders;

g.  Whether Google's scanning of the contents of Class members' emails for purposes beyond delivering targeted text ads and other related information to Gmail account holders is intentional;

h.  Whether Google's scanning of the contents of Class members' emails for purposes delivering targeted text ads and other related information to Gmail account holders amounts to an interception of electronic communication;

i.  Whether Google's scanning of the contents of Class members' emails for profit purposes beyond delivering targeted text ads and other related information to Gmail account holders is an endeavor to intercept electronic communication;

j.  Whether Google intentionally uses, or endeavors to use, the contents of Class members' email for the purpose of delivering targeted text ads and other related information to Gmail account holders, knowing or having reason to know that the information was obtained through the interception of an electronic communication;

k.  Whether Google's use of or endeavor to use information derived from the scanning of the contents of Class members' emails for the purpose of delivering targeted text ads and other related information to Gmail account holders is intentional;

l.  Whether Google uses, or endeavors to use, the contents of Class members' email for profit purposes beyond delivering targeted text ads and other related information to Gmail account holders;

m.  Whether Google's use, or endeavor to use, the contents of Class members' email for profit purposes beyond delivering targeted text ads and other related information to Gmail account holders intentional.

n.  Whether the Class Members suffered actual damages as a result of Google's actions;

o.  Whether Google made any profits as a result of the allegations made the basis of this suit;

p.  Whether statutory damages against Google should be assessed;

q.  Whether Google should be enjoined from scanning or using the content of Class members' emails for purposes of delivering text ads and other related information to

Gmail account holders; and

r.  Whether Google should be enjoined from scanning or using the content of Class members' emails for profit purposes beyond delivering text ads and other related information to Gmail account holders.

## C.  Typicality

67.   Plaintiff's claims are typical of the claims of the Class in that Plaintiff and the Class sent emails to Gmail account holders, Google scanned the emails' contents for the purpose of delivering text ads and other related information to the Gmail account holders, Google scanned the emails' contents for a profit purpose beyond the delivery of text ads and other related information to the Gmail account holders, Google used or endeavored to use the contents of the Plaintiff's email and the Class emails for a the purpose delivering text ads and other related information to the Gmail account holders, Google used or endeavored to use the contents of the Plaintiff's emails and the Class emails for a profit purpose beyond the delivery of text ads and other related information to the Gmail account holders, neither Plaintiff nor the Class consented to Google's scanning or use of the contents of Plaintiff's email or the Class emails for any purpose, Google profited from the scanning, use, or endeavor to use of the content of Plaintiff's email and the Class emails, and Plaintiff and the Class have been injured.

## D.  Adequacy of Representation

68.   Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff's interests do not conflict with the interests of the Class members.  Furthermore, Plaintiff has retained competent counsel experienced in class action litigation.  Plaintiff's counsel will fairly and adequately protect and represent the interests of the Class.

69.   Plaintiff asserts that pursuant to Fed. R. Civ. P. 23(b)(2), Google has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

70.   Plaintiff asserts that pursuant to Fed. R. Civ. P. 23(b)(3), questions of law or fact common to the Class members predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## CAUSE OF ACTION
### VIOLATIONS OF 18 U.S.C. §§ 2510 et seq

71.    Pursuant to 18 U.S.C. § 2510(8), the content of Plaintiff's email and Class members' emails includes any information concerning the substance, purport, or meaning of that communication.

72.    Pursuant to 18 U.S.C. § 2510(12), Plaintiff's email and the Class members' email amount to an "electronic communication."

73.    Google, as a corporation, is a "person" pursuant to 18 U.S.C. § 2510(6).

74.    Pursuant to 18 U.S.C. § 2510(4), Google "intercepts" Plaintiff's email and Class members' email when it scans the content of Plaintiff's email and Class members' emails for the purpose of delivering targeted ads and other related information to Gmail account holders.

75.    Pursuant to 18 U.S.C. § 2510(4), Google "intercepts" Plaintiff's email and Class members' email when it scans the content of Plaintiff's email and Class members' emails for a profit purpose beyond delivering targeted ads and other related information to Gmail account holders.

76.    Google intentionally intercepted and continues to intercept the Plaintiff's email and Class members' emails for the purpose of delivering targeted ads and other related information to Gmail account holders in violation of 18 U.S.C. § 2511(1)(a).

77.    Google intentionally intercepted and continues to intercept the Plaintiff's email and Class members' emails for profit purposes beyond delivering targeted ads and other related information to Gmail account holders in violation of 18 U.S.C. § 2511(1)(a).

78.    Google intentionally endeavored to intercept and continues to endeavor to intercept the Plaintiff's email and Class members' emails for the purpose of delivering targeted ads and other related information to Gmail account holders in violation of 18 U.S.C. § 2511(1)(a).

79.    Google intentionally endeavored to intercept and continues to endeavor to intercept the

Plaintiff's email and Class members' emails for profit purposes beyond delivering targeted ads and other related information to Gmail account holders in violation of 18 U.S.C. § 2511(1)(a).

80.   Google intentionally used and continues to use the contents of Plaintiff's email and Class members' email, knowing or having reason to know that the information was obtained through the interception of email in violation of §§ 2511(1)(a) and (1)(d).

81.   Google's scanning of the content of Plaintiff's email and Class member's email for the purpose of delivering targeted ads and other information to Gmail account holders does not amount to the normal course of business while engaged in an activity which is a necessary incident to the rendition of service or the protection of the rights or property of Google.

82.   Google's use of the content of Plaintiff's email and Class member's email for the purpose of delivering targeted ads and other information to Gmail account holders does not amount to the normal course of business while engaged in an activity which is a necessary incident to the rendition of service or the protection of the rights or property of Google.

83.   Google's scanning of the content of Plaintiff's email and Class member's email for a profit  purpose beyond delivering targeted ads and other information to Gmail account holders does not amount to the normal course of business while engaged in an activity which is a necessary incident to the rendition of service or the protection of the rights or property of Google.

84.   Google's use of the content of Plaintiff's email and Class member's email for a profit purpose beyond delivering targeted ads and other information to Gmail account holders does not amount to the normal course of business while engaged in an activity which is a necessary incident to the rendition of service or the protection of the rights or property of Google.

85.   No consent by Gmail accounts holders has been given for Google's interception and use of emails made the basis of this suit.

86.   As a result of Google's violations of § 2511, pursuant to § 2520, Plaintiff and the Class are entitled to:

    a.   Preliminary and permanent injunctive relief to halt Google's violations;

    b.   Actual damages to Plaintiff and the Class and disgorgement of profits made by Google;

    c.   In the alternative to actual damages to Plaintiff and the Class members, for each class member the greater of $100 a day for each day of violation or $10,000 whichever is greater;

    d.   Punitive damages; and

    e.   Reasonable attorneys' fees and other litigation costs reasonably incurred.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all Class members, requests judgment be entered against Defendant and that the Court grant the following:

1. An order certifying the Class and appointing Plaintiff and his counsel to represent the Class;

2. Judgment against the Defendant for Plaintiff's and the Class' asserted causes of action;

3. Preliminary and permanent injunctive relief against Defendant;

4. An award of actual damages to the Plaintiff and the Class, or an award to the Plaintiff and the Class, for each, the greater of $100 a day for each day of violation or $10,000, whichever is greater; and the disgorgement of profits made by Defendant as a result of its conduct;

5. An award to the Plaintiff and Class of punitive damages against Defendant;

6. An award of reasonable attorneys' fees and other litigation costs reasonably incurred; and

7. Any and all other relief to which the Plaintiff and the Class may be entitled.

Respectfully submitted,

Sean F. Rommel

Tex. Bar No. 24011612
srommel@wylyrommel.com
James C. Wyly
Tex. Bar No. 22100050
jwyly@wylyrommel.com

**WYLY~ROMMEL, PLLC**
2311 Moores Lane
Texarkana, Texas 75503
(903) 334-8646 (Telephone)
(903) 334-8645 (Fax)


Chris Travis
Admission by *Pro Hac Vice pending*
Travis@gill-law.com
Drake Mann
Admitted in ED Texas
Arkansas Bar No. 87108
mann@gill-law.com

**GILL ELROD RAGON OWEN
& SHERMAN, P.A.**
425 West Capitol Avenue, Suite 3801
Little Rock, Arkansas 72201
(501) 376-3800 (Telephone)
(501) 372-3359 (Fax)


M. Chad Trammell
Tex. Bar No. 20183750
chad@thetrammellfirm.com

**THE TRAMMELL LAW FIRM, PLLC**
418 North State Line Avenue
Texarkana, AR 71854
(870) 779-1860 (Telephone)
(870) 779-1861 (Fax)

**ATTORNEYS FOR PLAINTIFFS**