**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXARKANA**
**TEXARKANA DIVISION**

| | |
|---|---|
| **KEITH DUNBAR, Individually, and as Representative on Behalf of all Similarly Situated Persons,** | |
| **Plaintiff,** | **Civil Action N° 5:10CV00194-DF** |
| **versus** | **FIRST AMENDED** |
| | **CLASS ACTION COMPLAINT** |
| **GOOGLE, INC.** | |
| | **JURY DEMANDED** |
| **Defendant.** | |

PLAINTIFF, KEITH DUNBAR, Individually and on behalf of the Class described below ("the Class"), brings this nationwide Class Action suit against Defendant Google, Inc. ("Google"), and for his First Amended Complaint,[1] and upon information and belief, alleges the following:

## PARTIES

1.      Plaintiff is a citizen of the State of Texas, and he resides in Bowie County, Texas, which is within the Eastern District of Texas, Texarkana, Division.

2.      Google is a Delaware corporation, whose principal place of business is at 1600 Amphitheatre Parkway, Mountain View, County of Santa Clara, State of California.  Google has been served through its agent for service of process: Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

3.      Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over the Plaintiff's and the Class' claims arising under the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510 *et seq.,* a law of the United States.

4.      This Court has general and specific personal jurisdiction over the Defendant, in that Google has sufficient minimum contacts within the State of Texas and within the Eastern District of

---

[1] Plaintiff files his Amended Complaint pursuant to FED. R. CIV. P. Rule 15(a)(1)(B) because Defendant has yet to file a responsive pleading and 21days have not lapsed since service of the Defendant's Motion to Dismiss pursuant to Rule 12(b).

Texas, and further because certain material acts upon which this suit is based occurred within the Eastern District of Texas.

5.       Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) in that: (1) Google resides in the Eastern District of Texas because it is subject to personal jurisdiction within the Eastern District of Texas; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Google may be found in this district.

### **NATURE OF SUIT**

6.       Pursuant to Rule 23 of the *Federal Rules of Civil Procedure*, Plaintiff brings this nationwide class action lawsuit against Google for the unlawful and intentional interception of electronic communications and intentional use of the contents of electronic communications in violation of the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. Sections 2510 *et seq*.  Google operates a popular email service known as "Gmail."  Gmail account holders are assigned a Gmail email address through which to send and receive electronic communications.  Google scans the content of all electronic communications received and sent by Gmail account holders.  Utilizing a scanning or extraction device, Google intercepts all electronic communications sent to Gmail account holders.  Google uses the information and content obtained from the scanning of incoming electronic communications to sell and place advertisements in Gmail account holders' browser windows that are related to the content of intercepted electronic communications.

7.       Plaintiff, a non-Gmail account holder, has sent and continues to send electronic communications to Gmail account holders from non-Gmail email accounts.

8.       Google intercepted(s) these electronic communications and used(s) their content for the purpose of delivering targeted advertising to the Gmail account holder recipients.

9.       Neither Plaintiff nor the Gmail account holders consented(s) to the interception and use of Plaintiff's electronic communications and the contents thereof.

10.     This case involves the interception of electronic communications (i.e. emails) sent from Plaintiff and other non-Gmail account holders in violation of 18 U.S.C. § 2511(1)(a).[2]  It also involves the use by Google of content obtained from intercepted emails sent by the Class in violation of 18 U.S.C. § 2511(1)(d).   While Google states that it presently does not disclose the content of electronic communications to third parties, Google admits that it not only intercepts and scans all emails of Gmail account holders, but Google admits that it uses the content obtained through the interception from non-consenting, non-Gmail account holders to sell and place advertisements on the Gmail account holders' browser windows.  Google also intercepts and uses content from non-Gmail users' emails for purposes other than Gmail.  Google intercepts and uses the information from non-Gmail users without regard to the private or proprietary nature of the information.  As result of Google's actions in intercepting and using non-Gmail account holders' emails, Google obtains a monetary benefit.

11.     The actions complained of herein involve the interception and use of content of Plaintiff's and Class Members' electronic communications when they are sent to a Gmail user, whether through the initialization of electronic communications to the Gmail user, a response/reply to an electronic communication from the Gmail user, or any subsequent new electronic communication transmitted by Plaintiff and Class Members to a Gmail user.  This case does not involve the scanning of previously sent text from Plaintiff's and Class Members' prior emails which may be in the body of responsive communication.

**STATEMENT OF FACTS**

12.     Google owns the world's leading internet search engine, and, as part of its marketing strategy, offers a vast array of services to internet users.  Google's "free" services lure internet users, allowing Google to generate the majority of its revenues by selling online advertising aimed at the users of these "free" services.   The more users or usage through Google services that can be

---

[2] *See* Paragraph 190 for a definition of the "Class."

demonstrated by Google to advertisers, the more revenue Google makes.

13.     As part of its advertising business model, Google actively seeks out, collects, and stores vast amounts of behavioral information regarding internet users.  For Google, the acquisition, storage, and ready access to information directly correspond to advertising revenues.  As such, Google's advertising business model requires it to continue to acquire additional information.  Personalized, detailed, and behavioral information is the most valuable to Google.

14.     "Gmail" is an electronic communication service operated by Google.

15.     Google requires users to register to use Gmail separate and apart from using other Google services.

16.     Google assigns Gmail account holders a Gmail email address for the purposes of sending and receiving electronic communications through the electronic communication service operated by Google (i.e. Gmail).  Using Google's electronic communication service, Gmail account holders can receive electronic communications from other Gmail account holders and from non-Gmail account holders.

## The Contract Between Gmail Users and Google

17.     In order to obtain a Gmail account and use Google's electronic communication service to send and receive electronic communications, a person must agree to the Google Terms of Service, the Google Program Policies, and the Google Privacy Policy.  Each of these documents is a written contract comprising specific written clauses.

18.     The Terms of Service are attached as Exhibit D.  The Program Policies are attached as Exhibit G.  The Privacy Policy is attached as Exhibit H.

19.     To create a Gmail account, a person may view a webpage entitled, "A Google approach to Email."  *See* Exhibit A.

20.     The webpage entitled "A Google approach to Email" does not mention advertising.

Instead, Google touts "Lots of Space," "Less Spam," and "Mobile Access."  *See* Exhibit A.

21.     This webpage contains links to "Create an account," to "Terms & Privacy," and to "About Gmail."  *See* Exhibit A.

22.     If a person clicks on the link "About Gmail," the person is taken to a webpage entitled "Google's Approach to Email."  *See* Exhibit B.  This webpage gives Google's "Top 10 reasons to use Gmail."  Neither advertising nor receiving targeted ads is ever mentioned.

23.      At the top right of Exhibit B, "Google's Approach to Email," a big, blue rectangular button invites the user to "Get Started."  Clicking that link takes a user directly to the "Create an Account" webpage attached as Exhibit C.

24.     When a person clicks on the link to "Create an Account" on Exhibit A or on the inviting blue "Get Started" button on Exhibit B, the Gmail account page appears.  *See* Exhibit C.  After entering some personal information for the creation of the account, the person is asked to affirmatively agree to only three documents, all of which Google drafted: Google's Terms of Service, Google's Program Policy, and Google's Privacy Policy.  *See* Exhibit C.

25.     Google's Terms of Service is contained in a single written document entitled, "Google Terms of Service."  *See* Exhibit D.  When a person interested in reading the Terms of Service prints a "Printable Version" of the "Terms of Service," as allowed by Google's sign-in screen and encouraged at ¶ 2.4, a single document numbering nine (9) pages and paragraphs numbered 1.1 through 20.7 is printed.  *See* Exhibit D.

26.     In the "Google Terms of Service," Google expressly defines the collective word "Terms" to include only: (1) the "terms and conditions" set forth in the "Terms of Service" which Google defines as the "Universal Terms;" and (2) the "terms of any 'Legal Notices'" applicable to a specific Service, which Google defines as the "Additional Terms."  *See* Exhibit D, ¶ 1.2 and 1.3.  According to Google in ¶ 1.4 of the Terms of Service, only the "Universal Terms" and the "Additional Terms" form

"a legally binding agreement between [the user] and Google in relation to [the user's] use of the Services." *See* Exhibit D, ¶ 1.4.

27.   At paragraph 7.1, Google refers the user to certain "data protection practices" through a hyperlink, but Google only binds the Gmail user to Google's specific Privacy Policy mentioned at ¶ 7.2. *See* Exhibit D, ¶¶ 7.1 and 7.2.

28.   Paragraph 20.2 provides that "The Terms constitute the whole legal agreement between you [Gmail user] and Google and govern your use of the Services." *See* Exhibit D, ¶ 20.2. Other than the privacy policy referenced at ¶ 7.2, no other hyperlinks, webpages, documents, practices, or other terms are incorporated by reference to be included in and made a part of the "Google Terms of Service" and to create a binding agreement between Google and Gmail user.

29.   Paragraph 20.7 of the Terms of Service provides that "The Terms . . . shall be governed by the laws of the State of California." *See* Exhibit D, ¶ 20.7.

30.   As to the incorporated "Legal Notices," Google's Terms of Service at ¶ 1.5 specifically states, "If there is any contradiction between what the Additional Terms say and what the Universal Terms say, then the *Additional Terms shall take precedence in relation to that Service*." *See* Exhibit D, ¶ 1.5 (emphasis added). Accordingly, the Additional Terms or "Legal Notices" specific to Gmail take precedence over any conflicting provision contained in Universal Terms of the Google Terms of Service.

31.   In looking at the "A Google approach to email" screen (*See* Exhibit A), there exists a link for "Terms & Privacy." Once clicked, the "Terms & Privacy" screen lists the following: Legal Notices, Privacy Policy, Program Policies, and Terms of Service. *See* Exhibit E. When the user clicks on "Legal Notices" for Gmail (also called the "Additional Terms"), a one page, two paragraph document is provided. *See* Exhibit F.

32.   In the "Gmail Legal Notices," Google states its does not claim any ownership in any of

the content of any material transmitted in Gmail account.  *See* Exhibit F.

33.    In the "Gmail Legal Notices," Google affirmatively states to the user, "We will not use any of your content for *any purpose* except to provide you with the Service."  *See* Exhibit F (emphasis added).  The "Service" stated in Exhibit F is Gmail.

34.    From the "Create an Account" webpage (attached as Exhibit C), the Gmail applicant is required to accept the terms of Google's Program Policy.  Upon clicking the link to the "Program Policy," the reader is shown a two-page document, entitled, "Gmail Program Policies."  *See* Exhibit G. No other hyperlinks, web-pages, documents, practices, or other terms are incorporated by reference to be included in and made a part of the "Gmail Program Policies."  Upon printing a version of the "Gmail Program Policies" only the two page document found at Exhibit G will print.

35.    In addition to other terms, the Gmail Program Policy prohibits a user from using "Gmail to violate the legal rights (such as rights of privacy and publicity) of others."  *See* Exhibit G, page 1.

36.    From the "A Google approach to email" webpage (attached as Exhibit A), the Gmail applicant can access the "Terms & Privacy" page at Exhibit E.  Once there, the user can open Google's Privacy Policy.  Upon clicking the link to the "Privacy Policy," the reader is shown a four-page document, entitled, "Privacy Policy."  *See* Exhibit H.  No other hyperlinks, web-pages, documents, practices, or other terms are incorporated by reference to be included in and made a part of the "Privacy Policy."  Upon printing a version of the "Privacy Policy" only the two-page document found at Exhibit H will print.

37.    "Google Terms of Service," "Gmail Legal Notices," "Gmail Program Policies," and Google's "Privacy Policy," (Exhibits D, F, G, H) are the only terms to which the applicant must affirmatively "accept" and agree.

## Google Intercepts and Uses the Contents of Plaintiff's and Class Members' Email

38.    In various webpages and through links appearing on those webpages, *none of which are*

*incorporated* into the Terms of Service or any binding terms upon a Gmail user, Google makes a number of admissions:

39.     From a webpage entitled, "Privacy Center," Google mentions its Privacy Policy as a separate document, and then states, "The following statements explain specific privacy *practices* with respect to certain products and services."  *See* Exhibit I, page 1 (emphasis added).  Below the statement is a list of products and services.  ***Gmail is not listed***.

40.     There is no way for a user to intuit that Gmail, as a service, is related to any link referenced on the Google Privacy Center page.  *See* Exhibit I.

41.      In the left column of the "Privacy Center" webpage (attached as Exhibit I), there exists a link to "Advertising."  When the "Advertising" link is clicked, a webpage entitled, "Advertising and Privacy" can be viewed.  *See* Exhibit J.

42.     Google does not incorporate by reference the information on the webpage entitled, "Advertising and Privacy," into the Google Terms of Service, the Program Policy, or the Privacy Policy.

43.      In the next to the last paragraph of Exhibit J, Google states, "What information does Google use to *serve ads* on Gmail?"  *See* Exhibit J, page 4 (emphasis added).  Google then says:

> Google scans the text of Gmail messages in order to filter spam and detect viruses.  The Gmail filtering system also scans for keywords in users' emails which are then used to match and serve ads.  The whole process is automated and involves no humans matching ads to Gmail content.

*See* Exhibit J, page 4.

44.     Google does not incorporate these words into the Terms of Service, the Program Policy, or the Privacy Policy.

45.     At Exhibit J, Google only tells users it scans for "keywords" in the "users' emails."

46.     However, Google also scans Plaintiff's and Class Members' emails when they are sent to Gmail users.

47.     These emails are electronic communications as defined by 18 U.S.C. § 2510(12).

48.     The "keywords" scanned by Google amount to content of Plaintiff's and Class Members' email.

49.     Either in the scanning process, the matching process, or in some other manner, the "keywords" or content are acquired from Plaintiff's and Class Members' email by a device and matched to an advertisement.  The device is automated.

50.     The device is not a telephone or telegraph instrument, it is not telephone or telegraph equipment, it is not a telephone or telegraph facility, and it is not any component thereof.

51.     Following the acquisition of the "keywords" or content of Plaintiff's and Class Members' email, Google uses those "keywords" or content to match advertisements.

52.     On a web-page entitled "More on Gmail and privacy" (which is not accessible by links from Google's "Terms of Service," "Program Policy," "Privacy Policy," "Privacy Center," "Google's approach to email," or any page to which Google refers users regarding Gmail), Google states:

> Google scans the text of Gmail messages in order to filter spam and detect viruses, just as all major webmail services do.  Google also uses this scanning technology to deliver targeted text ads and other related information.  This is completely automated and involves no humans.

 *See* Exhibit K, page 2, 3d ¶.  Google further states:

> It is important to note that the ads generated by this matching process are *dynamically generated* each time a message is opened by the user—in other words, Google does not attach particular ads to individual messages or to users' accounts.

*See* Exhibit K, page 2, 4th ¶.

53.     Google does not incorporate any of the information of Exhibit K into the Terms of Service, the Program Policy, or the Privacy Policy.

54.     In Exhibit K, Google only tells user's it scans "Gmail messages."

55.     Plaintiff's and Class Members' email are not "Gmail."

56.     However, Google also scans Plaintiff's and Class Members non-Gmail emails when they are sent to Gmail users.

57.     These emails are electronic communications pursuant to 18 U.S.C. § 2510(12).

58.     The "text" of Plaintiff's and Class Members' email that is scanned by Google amounts to content of Plaintiff's and Class Members' email.

59.     Either in the scanning process, the matching process, or in some other manner, the text or content is acquired from Plaintiff's and Class Members' email by a device and matched to an advertisement.  The device is automated.

60.     The device is not a telephone or telegraph instrument, it is not telephone or telegraph equipment, it is not a telephone or telegraph facility, or any component thereof.

61.     The acquisition of content from Plaintiff's and Class Members' email occurs in the transfer of that email to the Gmail user.

62.     Following the acquisition of the "text" or content of Plaintiff's and Class Members' email, Google uses the "text" or content of Plaintiff's email to generate advertisements.

63.     On June 18, 2009, Nicole Wong, Deputy General Counsel for Google, testified before a House subcommittee on the privacy implication of behavioral advertising and in regard to the scanning and use of non-Gmail account holders' email and stated:

MR. SCALISE:      Do you read e-mails from people that are a Yahoo! or Google e-mail subscriber?  Do you read through those e-mails to gather information in any way? . . . .

MS. WONG: Yes.  We are using that same technology that scans for viruses and also scans for spam.  It is basically technology that looks for pattern text, and we use that not only for the spam blocking and viruses but also to serve ads within the Gmail user's experience so importantly like the—

MR. SCALISE:      So if two people are exchanging an e-mail about a sporting event and they are talking about going to the game and then maybe they are going to want to go out for a drink afterwards, could they then maybe expect to get an advertisement about which different bars are offering specials after the game?

MS. WONG:  They won't get an e-mail with an advertisement but only the Gmail user

will be able to see ads that show up just like they show up on the side of our search results that are key to specific words—they are key words just as if you typed them into our browser that are calling from our repository of millions of ads to deliver an ad that is targeted to the content that you are reading.

64.     Ms. Wong agreed that Google reads the email of Gmail subscribers, and Plaintiff asserts Google reads his and Class Members' non-Gmail emails when they are sent to Gmail users.

65.     The "pattern text" of Plaintiff's and Class Members' email that is scanned by Google amounts to content of Plaintiff's and Class Members' email.

66.     Either in the scanning process, the matching process, or in some other manner, the "pattern text" or content is acquired from Plaintiff's and Class Members' email by a device and matched to an advertisement.

67.     As Ms. Wong admits, the content of Plaintiff's and Class Members' email "serve ads."

68.     Ms. Wong admits that the content of Plaintiff's and Class Members' email serve as the content to which Google targets advertisements sold by Google.

69.     The technology or device mentioned by Ms. Wong is not a telephone or telegraph instrument, it is not telephone or telegraph equipment, it is not a telephone or telegraph facility, and it is not any component thereof.

70.     Following the acquisition of the "pattern text" or content of Plaintiff's and Class Members' email, Google uses the "pattern text" or content to sell and "serve ads."

71.     Upon information and belief, and without limitation, Google utilizes an embodiment of an extraction device or devices mentioned in United States Patent Application US 2004/0059712 A1, or one similar thereto, to intercept Plaintiff's and Class Members' email and to acquire content from that email and use (*i.e.* match) that content to target advertisements displayed on the Gmail user's screen. *See* Exhibit L.   The patent application was filed under the Attorney Docket No.: Google-31/CON3 (GP-064—04-US).  *See* Exhibit M.  Although several claims of the proposed invention were rejected on or about February 1, 2011, the Application illustrates the device(s) used by Google to intercept

electronic communications.

72.     At ¶ 0087 of Exhibit L, Google's application discusses embodiments of an invention which may utilize various "devices" for the extraction or acquisition of content from in-coming email. *See* Exhibit L, ¶ 0087.   In doing so, Google refers to Figure 5, block 520, entitled "Accept and/or Determine E-Mail Information," and Figure 6, block 612, entitled "Relevance Information Extraction/Generation Operations."   *See* Exhibit L, ¶ 0087.   In describing the "extraction operations," Google states, "an e-mail server may extract and/or generate e-mail information."   *See* Exhibit L, ¶ 0087.   In addition, Google states, "Indeed, e-mail information extraction and/or generation may be distributed over more than one device (e.g., e-mail application, browser, e-mail server, e-mail information server, e-mail relevant ad server, etc.)."   *See* Exhibit L, ¶ 0087.

73.     In addition, Google states, "Various ways of extracting and/or generating relevance information are described in U.S. Provisional Application Serial No. 60/413,536, entitled, 'METHODS AND APPARATUS FOR SERVING RELEVANT ADVERTISEMENTS', filed on Sep. 24, 2002, . . . and in U.S. patent application Ser. No. 10/314,427, entitled "METHODS AND APPARATUS FOR SERVING RELEVANT ADVERTISMENTS', filed on Dec. 6, 2002 . . . ."   *See* Exhibit L, ¶ 0089.

74.     The "e-mail information" of Plaintiff's and Class Members' email that is extracted by Google amounts to the content of Plaintiff's and Class Members' emails.   *See* Exhibit L, ¶¶ 0046, 0051, and 0055-80.

75.     The "e-mail information" or content of Plaintiff's and Class Members' email is "extracted" or acquired by Google by use of a "device" or "more than one device."

76.     The device or devices are not a telephone or telegraph instrument, they are not telephone or telegraph equipment, they are not a telephone or telegraph facility, or any component thereof.

77.     The interception of Plaintiff's and Class Members' email occurs during the transfer of that email to the Gmail user.

78.     Following the "extraction" of "e-mail information" or content from Plaintiff's and Class Members' email, Google uses the "e-mail information" or content "for purposes of targeted ads."  *See* Exhibit L, ¶ 0087.

## Gmail Users Do Not Consent To Google Intercepting Email

79.     Google drafted the terms and is the author of its "Terms of Service," "Gmail Legal Notices," "Program Polices," and "Privacy Policy."

80.     The Google "Gmail Program Policies" (Exhibit G) do not mention the scanning, interception, or use of content of email for targeted advertising.

81.     By agreeing to the terms of the "Gmail Program Policy," a user of Gmail does not consent to the interception and use of non-Gmail users' electronic communications as made the basis of this suit.

82.     The Google "Privacy Policy" (Exhibit H) does not mention the scanning, interception, or use of content of email for targeted advertising.

83.     By agreeing to the terms of the "Privacy Policy," a user of Gmail does not consent to the interception and use of non-Gmail users' electronic communications as made the basis of this suit.

84.     Paragraph 7.1 of the "Terms of Service" refers the Gmail user to "Google's privacy policy," which can be found at a link on the web-page http://www.google.com/privacy.html.  *See* Exhibit D, ¶ 7.1.  Google refers the user to this policy in regard to Google's treatment of only the user's "personal information."

85.     Paragraph 7.1 of the "Terms of Service" does not refer the user to any document other than the "privacy policy."

86.     While the web-page identified at http://www.google.com/privacy.html is entitled the "Privacy Center," neither the "Privacy Center" nor the various hyperlinks identified on that particular page are incorporated into the "Privacy Policy" or the other terms to which the user must agree.  *See*

Exhibit D.

87.     The information and the hyperlinks found on the "Privacy Center" webpage do not mention the word "Gmail," and from that page a user is not given any indication that any hyperlink might contain additional information related to Gmail.

88.     Paragraph 7.2 of the "Terms of Service" states that the user agrees to the use of "*your data* in accordance with Google's privacy policies."  *See* Exhibit D, ¶ 7.2.  The only privacy "policies" a viewer is directed to are those in the aforementioned "Privacy Policy."  No other links are offered to take potential users to an actual policy other than the "Privacy Policy."

89.     Paragraph 7.2 of the "Terms of Service" does not ask and does not require the user to agree to Google's use of any other person's data.

90.     Paragraph 7.2 does not ask and does require the user to consent to Google's interception and use of any other person's data.

91.     At ¶ 8.1 of the "Terms of Service," Google places responsibility for content to which a user may have access on the originator of the content.  *See* Exhibit D, ¶ 8.1.

92.     At ¶ 8.2 of the "Terms of Service," Google notifies the user that the content presented as part of the services may be owned or protected by a third party, and the user may do nothing with that content "unless you have been *specifically told* that you may do so by Google or by the owners of that Content, in a separate agreement."  *See* Exhibit D, ¶ 8.2 (emphasis added).

93.     At ¶ 8.3 of the "Terms of Service," Google states:

Google reserves the right (but shall have no obligation) to pre-screen, review, flag, filter, modify, refuse or remove any or all Content from any Service.  For some Services, Google may provide tools to filter out explicit sexual content.  These tools include the SafeSearch preference settings (see http://www.google.com/help/cutomoze.html#safe). In addition, there are commercially available services and software to limit access to material that you may find objectionable.

*See* Exhibit D, ¶ 8.3.

94.     At ¶ 8.4 of the "Terms of Service," Google warns users that they may be exposed to

content that they find "offensive, indecent or objectionable and that, in this respect, you use the Services at your own risk." *See* Exhibit D, ¶ 8.4.

95.     At ¶ 8.5 of the "Terms of Service," Google places sole responsibility on the user for any content created, transmitted, or displayed by user while using any of the services and for the consequences of the user's actions. *See* Exhibit D, ¶ 8.5.

96.     The first sentence of ¶ 8.3 of the "Terms of Service," when viewed in the context of the entirety of Section 8 and the remaining sentences within ¶ 8.3, is limited to Google's reservation of rights to protect its services and users.

97.     No wording in ¶ 8.3 advises users or seeks the consent of users for Google's interception of non-Gmail users' email.

98.     No wording in ¶ 8.3 advises users or seeks the consent of users for Google's use of the content of non-Gmail users' email that have been intercepted.

99.     When a user views the "Terms of Service" webpage, a link called "Terms of Service Highlights" appears in the left column. *See* Exhibit N.  Google describes the "highlights" as providing users with the "basics" or a "summary" of the Terms of Service. *See* Exhibit N.  In discussing the "highlights" of Google's "Terms of Service," and in particular the Section 8 highlights regarding dealing with Content, Google states:

About your content . . . .

•       Content on our services usually isn't ours. *We may not monitor what we host or link to, although in some limited case we might.* Don't be surprised if you see something you don't like.  You can always tell us about it or stop looking.

*See* Exhibit N, ¶ "About your Content" (emphasis added).

100.    At Exhibit N, when Google states, "We may not monitor what we host or link to, although in some limited case we might," Google is summarizing the first sentence of ¶ 8.3 of the "Terms of Service."

101.   The words "pre-screen," "review," "flag," "filter," "modify," "refuse," and "remove" are ambiguous in the context of ¶ 8.3 of the Terms of Service, Section 8 of the Terms of Service, the "Terms of Service," the "The Terms of Service Highlights," the "Gmail Legal Notices," the " Program Policies," and the "Privacy Policy" as to whether the definition of these words include the acquisition and use of content of electronic communication as made the basis of this suit.

102.   Paragraph 17.1 of the "Terms of Service" advises users that "*Some* of the Services are supported by advertising revenue and may display advertisements and promotions."   *See* Exhibit D, ¶ 17.1 (emphasis added).   Google does not refer to Gmail as a service to which this provision is applicable.

103.   Paragraph 17.1 of the "Terms of Service" further provides, "These advertisements may be targeted to the *content* information stored on the Services, queries made through the Service or other information."   *See* Exhibit D, ¶ 17.1 (emphasis added).   Google does not refer to Gmail as a service to which this provision is applicable.

104.   At ¶ 17.1 in the "Terms of Service," Google does not advise the user how the "content" is "targeted."

105.   At ¶ 17.1 in the "Terms of Service," Google does not advise the user that "content" may be from a non-Gmail user.

106.   At ¶ 17.1 in the "Terms of Service," Google does not use in ¶ 17.1 the capitalized word "Content" as defined in ¶ 8.1 and used throughout the "Terms of Service."

107.   Non-Gmail users do not store matters on Google's Gmail.

108.   Non-Gmail users do not make queries through Gmail or other information.

109.   The language of ¶ 17.1 in the "Terms of Service" is ambiguous in the context of the "Terms of Service," the "Gmail Legal Notices," "The Program Policies," and the "Privacy Policy" as to whether the definition of the words in ¶ 17.1 include the acquisition and use of content of electronic

communication as made the basis of this suit.

110.   Paragraph 17.3 of the "Terms of Service" provides, "In consideration for Google granting you access to and use of the Services, you agree that Google may *place such advertising on the Services.*"   *See* Exhibit D, ¶ 17.3.   Paragraph 17.3 only allows Google to place advertisements on the unidentified services; it does not address or solicit consent.

111.   By agreeing to the terms of the "Terms of Service," a user of Gmail does not consent to the interception and use of non-Gmail users' electronic communications as made the basis of this suit.

112.   Pursuant to ¶ 1.5 of the "Terms of Service," the Additional Terms or Legal Notices for a particular Service, like Gmail, take precedence over any term within the "Terms of Service."   *See* Exhibit D, ¶ 1.5.

113.   The "Gmail Legal Notices" specifically states, "We will not use any of your content for any purpose except to provide you with the Service."   *See* Exhibit F.

114.   The electronic communication service known as Gmail is the applicable Google "Service" within the "Gmail Legal Notices."

115.   Advertising is not the applicable Google "Service" within the "Gmail Legal Notices."

116.   Advertising is not a Google "Service" to Gmail users.

117.   Advertising is not a service within Gmail.

118.   When a user subscribes to Gmail, targeted advertising is not mentioned as a service in the Gmail Terms of Service, Program Policies, and Privacy Policies.

119.   On the Google web-page, "What is Gmail?" advertising is not mentioned as a service within Gmail.   *See* Exhibit O.

120.   On the Google web-page, "Google's approach to email, Top 10 reasons to use Gmail," advertising is not mentioned as a "reason" to use Gmail.   *See* Exhibit B.

121.   Paragraph 17.1 of the "Terms of Service" distinguishes "Services" from advertising

revenues which pay for the "Services." *See* Exhibit D.

122. Paragraph 17.3's specific request for the user to agree to the placement of advertisements on Services evidences that advertisements are not "Services."

123. Paragraph 17.3's specific request for the user to agree to the placement of advertisement on Services evidences that advertisements are not part of any "Service."

124. If advertisements, and in particular targeted advertisements based upon the content of Plaintiff's and Class Members' email, were a part of the Services offered by Google, the inclusion of ¶ 17.3 in the "Terms of Service" would be unnecessary.

125. Paragraphs 7.1, 7.2, 8.3, 17.1, and 17.3 are in contradiction with the "Additional Terms" entitled "Gmail Legal Notices" and are invalid to the extent they purport to allow for the interception and use of the content of Plaintiff's and Class Members' email for anything other than to provide the "user" with the Service of Gmail.

126. Paragraphs 7.1, 7.2, 8.3, 17.1, and 17.3 of the "Terms of Service" and "Gmail Legal Notices" are silent with regard to the interception and use of the content of incoming non-Gmail user's email for the purpose of delivering targeted ads.

127. Paragraphs 7.1, 7.2, 8.3, 17.1 and 17.3 of the "Terms of Service" and "Gmail Legal Notices" are ambiguous with regard to consent for the interception and use of the content of incoming non-Gmail user's email for the purpose of delivering targeted ads.

128. Previously identified Exhibit J, entitled "Advertising and Privacy," is a web-page from a link in the "Privacy Center" and listed under "Product Information."  Google did not incorporate this webpage into any agreement made by the user for a Gmail account.

129.  In the next to last section, entitled, "What information does Google use to serve ads on Gmail?" Google states that its filtering system scans for "keywords in *users'* emails which are then used to match and serve ads."  *See* Exhibit J, page 4 (emphasis added).

130.   Plaintiff's and Class Members' emails are not "users' emails."

131.   The language in Exhibit J is in contradiction with the "Additional Terms" entitled "Gmail Legal Notices" and is invalid to the extent it purports to notify the user of any interception and use of the content of Plaintiff's and Class Members' email for anything other than to provide the "user" with the Service of Gmail.

132.   The language of Exhibit J is ambiguous with regard to consent or notice of the interception of content of incoming non-Gmail user's email for the purpose of delivering targeted ads.

133.   On the "Create an Account" screen (Exhibit C), Google states, "With Gmail, you won't see blinking banners ads.  Instead, we display ads you might find useful that are relevant to the content of your messages.  Learn more."   Exhibit C, "Create an Account," is not part of any agreement made by the user regarding a Gmail account.

134.   The phrase, "Learn more" is a hyperlink.

135.   Looking at Exhibit C, Google does not identify how the "content" is obtained.

136.   Looking at Exhibit C, Google only states the ads are relevant to the content of the user's messages.

137.   Plaintiff's and Class Members' emails are not the "users'" messages.

138.   The language in Exhibit C is in contradiction with the "Additional Terms" entitled "Gmail Legal Notices" and is invalid to the extent it purports to notify the user of any interception and use of the content of Plaintiff's and Class Members' email for anything other than to provide the "user" with the Service of Gmail.

139.   The language of Exhibit C is ambiguous with regard to consent or notice of the interception of content of incoming non-Gmail user's email for the purpose of delivering targeted ads.

140.   By clicking on the hyperlink, "Learn more," on Exhibit C, the applicant is taken to a webpage entitled, "Ads in Gmail and your personal data."  *See* Exhibit P.  Google did not incorporate

the webpage attached as Exhibit P and entitled, "Ads in Gmail and your personal data," into any agreement made by the user for a Gmail account.

141.   At Exhibit P, "Ads in Gmail and your personal data," Google states, "In Gmail, ads are related to the content of *your messages*."   Google further states, "Ad targeting in Gmail is fully automated, and no humans read *your email* in order to target advertisements or related information." *See* Exhibit P.

142.   Google does not identify how the content is obtained.

143.   At Exhibit P, Google only states the advertisements are relevant to the user's messages and the user's emails.

144.   Plaintiff's and Class Members' emails are not the users' messages or the users' email.

145.   The language in Exhibit P is in contradiction with the "Additional Terms" entitled "Gmail Legal Notices" and is invalid to the extent it purports to notify the user of any interception and use of the content of Plaintiff's and Class Members' email for anything other than to provide the "user" with the Service of Gmail.

146.   The language of Exhibit P is ambiguous with regard to consent or notice of the interception of incoming electronic communications for the purpose of delivering targeted ads.

147.   Gmail users do not consent to the interception of incoming electronic communications for the acquisition of content for targeted advertising.

148.   Gmail users do not consent to the use of the content of incoming electronic communications for the purpose of targeted advertising.

149.   Neither Plaintiff nor the Class Members have consented to Google intercepting and using the content of their electronic communications.

**Targeted Advertising Based Upon Intercepted Content Of Email Is Not
Necessary For The Rendition Of The Service Of Gmail Or For The
Protection Of Google's Rights And Property And
It Is Not In The Ordinary Course Of Business Of**

## An Electronic Communication Service

150.   Pursuant to 28 U.S.C. § 2510(15), an "electronic communication service" means any service which provides to users thereof the ability to send and receive electronic communications.

151.   "Gmail" is an "electronic communication service" (as defined by 28 U.S.C. § 2510(15)).

152.   "Gmail" is the only "electronic communication service" (as defined by 28 U.S.C. § 2510(15)) offered by Google.

153.   A Gmail account holder who sends and receives email through Gmail is a "user" pursuant to 28 U.S.C. § 2510(13).

154.   A Gmail "user" (as defined by 28 U.S.C. § 2510(13)) receives Gmail through a Gmail account and through no other service of Google.

155.   Emails sent and received by Gmail account holders through Gmail are "electronic communications" (as defined by 28 U.S.C. § 2510(12).

156.   Although the document "More on Gmail and privacy" appears to only be locatable by an actual Google search (as opposed to certain other webpages attached as exhibit, which are located at hyperlinks in various other webpages), in Exhibit K, Google expressly states, "All major free webmail services carry advertising, and most of it is irrelevant to the people who see it." *See* Exhibit K, page 1.

157.   When Google states, "All major free webmail services carry advertising, and most of it is irrelevant to the people who see it," Google admits that the "free" service or ability of a user of an electronic communication service to send and receive email can be rendered without the interception and use of content of email.

158.   The acquisition and use of content from email for the purpose of displaying "relevant advertising" attached to emails sent or received through an electronic communication service is not necessary incident to the ability to send or receive email or to operate an electronic communication service.

159.   "Targeted ads" in Gmail based upon the content of Plaintiff's and Class Members' email are not necessary incident to the ability for Google, if acting as an electronic communication service, to provide Gmail account holders with the ability to send and receive electronic communications.

160.   In Google's case, it is the opposite.  Google uses the content of Plaintiffs' and Class Members' email for target advertisements, or as Google states it, to "serve ads."  As such, the service of offering free Gmail gives Google access to yet another source of behavioral information by which to sell advertisements.

161.   Google has the technical capacity to offer Gmail without targeted advertisements based upon the content of email to and from Gmail users.

162.   At Exhibit K, page 2, Google further states, "Google scans the text of Gmail messages in order to filter spam and detect viruses, just as all major webmail services do.  Google also uses this scanning technology to deliver targeted ads and other related information."  Google admits that the scanning for the protection of the service and property, as performed by the rest of the industry, is wholly separate from the delivery of targeted ads.

163.   The acquisition and use of content from electronic communications for the purpose of displaying "targeted ads" attached to emails sent or received through an electronic communication service is not necessary incident to the protection of the rights or property of the provider of that service.

164.   "Targeted ads" in Gmail are not necessary incident to the protection of the rights or property of Google for providing the electronic communication service known as Gmail.

165.   The industry standard for webmail electronic communication services does not include the interception and use of the content of non-user's email for the purpose of delivering targeted advertising to the user of the webmail electronic communication service.

166.   The ordinary course of business within the industry for webmail electronic

communication services for the ability to send and receive electronic communications does not include the interception of content of an electronic communication and the use of its content for the delivery of targeted advertisement to a user of the service.

167.   Google's services that are not related to the ability to send and receive electronic communications are not electronic communication services.

168.   Google's targeted advertising is not an electronic communication service as defined by 18 U.S.C. § 2510(15).

169.   Google admits that it stands alone in the industry of webmail electronic communication services with its interception and use of non-user's email for the purpose of delivering targeted advertising to Gmail users.

170.   Google's interception and use of content of electronic communications from Plaintiff and the Class Members for the purpose of delivering targeted advertisements to a user of Gmail is not within the ordinary course of business of an electronic communication service.

### Google's Interception And Use Of The Content of Plaintiff's and Class Members' Email Is Not Limited To Targeted Advertisements To Gmail Users

171.   Upon information and belief, Google's interception and use of the content of Plaintiff's and Class Members' electronic communication is not limited to the placement of targeted advertising on Gmail user's screens.

172.   On September 24, 2010, Eric Schmidt, CEO of Google, stated to Charlie Rose on the PBS television network:

> CHARLIE ROSE:      So how do you see the challenge from Facebook and social networking?
> ERIC SCHMIDT:      Well, social networking is important, and Facebook is a consequential and very impressive company.  And social information will be used by Google and by others, I should add, to make the quality of the results, the quality of the experience much better.  The more we know about what your friends do—with your permission, and I need to say that about 500 times—we can actually use that to improve the experience that you have of getting information that you care about.
> CHARLIE ROSE:      But at the same time, people are saying, for example, in e-

commerce—it is more likely you want to be served by the opinions of ten friends than you are a Google Search.

ERIC SCHMIDT:      Well, so far the evidence is that Google search is doing very well.  So if that's the future, we'll see.  We can certainly make our advertising much more effective to the degree we have more information about who your friends are—and, again, with your permission, we can tie that in.

173.    Google intercepts and acquires the content of Plaintiff's and Class Members' electronic communications for purposes other than Service of Gmail to users.

174.    Google uses the intercepted content of Plaintiff's and Class Member's electronic communications for purposes other than the Service of Gmail to users.

175.    For the purposes other than the Service of Gmail to users, Google uses the same or similar device(s) to acquire the content of Plaintiff's and Class Members' email as it does for its targeted advertisement placement in Gmail.

176.    For the purposes other than the Service of Gmail, Google's interception and use of the content of Plaintiff's and Class Members' electronic communications is not an activity which is necessary incident to the rendition of Gmail or to the protection of the rights or property of Google in providing Gmail.

177.    Google's interception and use of content of electronic communications from Plaintiff and Class Members for purposes beyond providing Gmail to users is not within the ordinary course of business of an electronic communication service.

178.    No party to Plaintiff's and Class Members' email to Gmail users has consented to Google's interception or use of the content of Plaintiff's and Class Members' electronic communications as made the basis of this suit, to include purposes other than the Service of Gmail to users.

## Plaintiff Has Sent And Continues To Send Email To Gmail Users

179.    Within the Class Period, Plaintiff has sent and continues to send e-mails to Gmail account holders from non-Gmail email accounts.

180.   Plaintiff's emails are electronic communications.

181.   At the time Plaintiff sent the emails to Gmail account holders, Plaintiff did so from non-Gmail email accounts.

182.   Google intentionally intercepted and used the content of Plaintiff's e-mails to Gmail account holders for the purpose of delivering targeted text ads and other information to the Gmail account holder and for Google's commercial gain.

183.   In one specific instance and based solely on the content of Plaintiff's email, when Plaintiff's email was received by the Gmail account holder, links to competing businesses were provided for viewing by the Gmail account holder.

184.   Plaintiff did not consent to Google's intentional interception and use of the content of Plaintiff's emails to Gmail account holders for the purpose of delivering targeted text ads and other information to the Gmail account holder or for any other reason.

185.   Google's intentional interception and use of the content of Plaintiff's emails or the use of the information derived thereof for the purpose of delivering targeted text ads and other related information to the Gmail account holder or for other reasons provided a financial gain to Google.

186.   Google did not compensate Plaintiff for the interception and use of the content of Plaintiff's email or the use of the content of Plaintiff's email for the purpose of delivering targeted text ads and other related information to the Gmail account holder or for any other reason

187.   Google profited from and continues to profit from the content of Plaintiff's and Class Members' email.

188.   Google's storage of Gmail user's data, including received, sent, and unsent email, to include any and all backup or other uses by Google of that data, allows Google the ability to determine the number of non-Gmail users' email sent to Gmail users for the two years prior to this suit and continuing.

189.   Through Google's storage of Gmail user's email, to include any all backup or other uses by Google of that email, Google can obtain the email addresses of non-Gmail user's email sent to Gmail users for the two years prior to this suit and continuing.

## CLASS ALLEGATIONS

190.   Plaintiff brings this nationwide class action, pursuant to Rule 23 of the *Federal Rules of Civil Procedure*, individually and on behalf of all members of the following Class.  The Class consists of:

> All persons located within the United States who sent emails from a non-Gmail account email address to a Gmail account e-mail address from within two years before the filing of this action up through and including the date of the judgment in this case (as used throughout this Complaint before and after this definition, the "Class").
>
> Excluded from the class are the following individuals and/or entities:
>
> a.   Any and all federal, state, or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;
>
> b.   Individuals or entities, if any, who timely opt out of this proceeding using the correct protocol for opting out;
>
> c.   Individuals or entities, if any, who have previously settled or compromised claims(s) as identified herein for the class; and
>
> d.   Any currently sitting federal judge and/or person within the third degree of consanguinity to any federal judge.

### A.  Numerosity

191.   The Class is so numerous that joinder of all members is impracticable.   Upon information and belief, the number of Gmail account holders is more than 100 million users. Correspondingly, Plaintiff alleges the numbers for the Class are in the millions.

### B.  Commonality

192.   There are questions of law or fact common to the class.  These questions include, but are not limited to, the following:

a. Whether Google intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept electronic communications in the form of Plaintiff's and Class Members' email through Gmail accounts;

b. Whether Google intentionally uses, or endeavors to use, the contents of electronic communications in the form of Plaintiff's and Class Members' email through Gmail accounts knowing or having reason to know that the information was obtained through the interception of the electronic communication in violation of 28 U.S.C. § 2511(a).

c. Whether Google acted intentionally.

d. Whether Google acquired any information concerning the substance, purport, or meaning ("content") of Plaintiff's and Class Members' email.

e. Whether Plaintiff's and Class Members' email sent to Gmail users amount to electronic communications as defined as any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate commerce.

f. Whether Google uses an electronic, mechanical, or other device to acquire the content of Plaintiff's and Class Members' email, with said device meaning any device or apparatus which can be sued to intercept a wire, oral, or electronic communication and that is not any telephone or telegraph instrument, telephone or telegraph equipment, telephone or telegraph facility, or any component thereof.

g. Whether Google, through the offering of Gmail, is a provider of an electronic communication service.

h. Whether any party to the emails sent by Plaintiff and Class Members to Gmail accounts consented to the interception or use of the content of Plaintiff's and Class Members' email.

i. Whether Google's interception and use of content of Plaintiff's and Class Members' email is an activity which is a necessary incident to the rendition of providing the electronic communication service of Gmail.

j. Whether Google's interception and use of content of Plaintiff's and Class Members' email is an activity which is necessary incident to the protection of the rights or property of the Google as to Gmail.

k. Whether Google's interception and use of content of an electronic communication from a non-user of Gmail for the purpose of delivering targeted advertisements to a user of Gmail is within the ordinary course of business of a provider of an electronic communication service.

l. Whether the interception and use of content of an electronic communication from a

non-user of Gmail for purposes beyond providing Gmail to users of Gmail is within the ordinary course of business of an electronic communication service.

m. Whether the Class Members suffered actual damages as a result of Google's actions.

n. Whether Google made any profits as a result of the allegations as made the basis of this suit.

o. Whether statutory damages against Google should be assessed.

p. Whether Google should be enjoined from intercepting  or using the content of Class members' emails for purposes of delivering text ads and other related information to Gmail account holders; and

q. Whether Google should be enjoined from intercepting or using the content of Class members' emails for purposes beyond the Service of Gmail.

## C.  Typicality

193.   Plaintiff's claims are typical of the claims of the Class in that Plaintiff and the Class sent emails to Gmail account holders, Google intercepted and acquired the emails' contents for the purpose of delivering text ads and other related information to the Gmail account holders, Google intercepted and acquired the emails' contents for purposes beyond the service of Gmail,  Google used or endeavored to use the contents of the Plaintiff's email and the Class emails for a the purpose delivering text ads and other related information to the Gmail account holders, Google used or endeavored to use the contents of the Plaintiff's emails and the Class emails for purposes beyond the Service of Gmail, the users of Gmail did not consent to the interception and uses made the basis of this suit, neither Plaintiff nor the Class consented to Google's interception and uses  of content made the basis of this suit, Plaintiff and the Class Members have been harmed, and Google profited from the interception and use of the content of Plaintiff's Class emails.

## D.  Adequacy of Representation

194.   Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff's interests do not conflict with the interests of the Class members.  Furthermore, Plaintiff has retained competent

counsel experienced in class action litigation.  Plaintiff's counsel will fairly and adequately protect and represent the interests of the Class.

195.   Plaintiff asserts that pursuant to Fed. R. Civ. P. 23(b)(2), Google has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

196.   Plaintiff asserts that pursuant to Fed. R. Civ. P. 23(b)(3), questions of law or fact common to the Class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**CAUSE OF ACTION**
**<u>VIOLATIONS OF 18 U.S.C. §§ 2510 et seq</u>**

197.   Google, as a corporation, is a "person" pursuant to 18 U.S.C. § 2510(6).

198.   Throughout the entirety of the conduct upon which this suit is brought, Google's actions were/are intentional.

199.   Throughout the entirety of the conduct upon which this suit is brought, Google's actions affect interstate commerce.

200.   Pursuant to 18 U.S.C. § 2511(1)(a), Google intentionally intercepted, intercepts, or endeavored or endeavors to intercept the electronic communications of Plaintiff's email and Class members' emails based on the following:

- Google acquired(s) the content of Plaintiff's and Class Members' email;

- Plaintiff's and Class Members' emails are electronic communications;

- Google utilized(s) a device composing of an electronic, mechanical or other device or apparatus to intercept Plaintiff's and Class Members' electronic communications;

- Google's intercepting device is not a telephone or telegraph

instrument, it is not telephone or telegraph equipment, it is not a telephone or telegraph facility, or it is not any component thereof;

- Google does not furnish the device to Gmail users and users do not use the device for connection to the facilities;

- The device is not used by Google, if operating as an electronic communication service, in the ordinary course of its business as a provider of an electronic communication service;

- Google's interception of Plaintiff's and Class Members' electronic communications for the purpose of delivering targeted advertisements or for purposes beyond the Service of Gmail are not within the ordinary course of business of a provider of an electronic communication service

201.   Pursuant to 18 U.S.C. § 2511(1)(d), Google intentionally used, uses, or endeavored or endeavors to use the contents of Plaintiff's and Class Members' electronic communications knowing or having reason to know that the information was obtained through the interception of the electronic communication in violation of 18 U.S.S. § 2511(1)(a).

202.   Google's interception of and use of the contents of Plaintiff's and Class Members' electronic communications were not performed by an employee while engaged in any activity which is necessary incident to the rendition of Gmail or to the protection of the rights or property of the Google.

203.   Advertising is not a service of an electronic communication service as defined by 18 U.S.C. § 2510(15).

204.   Advertising is not a service of a provider of an electronic communication service as defined by 18 U.S.C. § 2510(15).

205.   No party to the electronic communications sent by Plaintiff and the Class Members as made the basis of this suit consented to Google's interception or use of the contents of the electronic communications.

206.   As a result of Google's violations of § 2511, pursuant to § 2520, Plaintiff and the Class are entitled to:

a.  Preliminary and permanent injunctive relief to halt Google's violations;

b.  Actual damages to Plaintiff and the Class and disgorgement of profits made by Google;

c.  In the alternative to actual damages to Plaintiff and the Class members, for each class member the greater of $100 a day for each day of violation or $10,000 whichever is greater;

d.  Punitive damages; and

e.  Reasonable attorneys' fees and other litigation costs reasonably incurred.

## JURY DEMANDED

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury on any issue triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all Class members, requests judgment be entered against Defendant and that the Court grant the following:

1.  An order certifying the Class and appointing Plaintiff and his counsel to represent the Class;

2.  Judgment against the Defendant for Plaintiff's and the Class' asserted causes of action;

3.  Preliminary and permanent injunctive relief against Defendant;

4.  An award of actual damages to the Plaintiff and the Class, or an award to the Plaintiff and the Class, for each, the greater of $100 a day for each day of violation or $10,000, whichever is greater; and the disgorgement of profits made by Defendant as a result of its conduct;

5.  An award to the Plaintiff and Class of punitive damages against Defendant;

6.  An award of reasonable attorneys' fees and other litigation costs reasonably incurred; and

7.  Any and all other relief to which the Plaintiff and the Class may be entitled.

Respectfully submitted,

/s/ Sean F. Rommel               
Sean F. Rommel
Tex. Bar No. 24011612
srommel@wylyrommel.com
James C. Wyly
Tex. Bar No. 22100050
jwyly@wylyrommel.com

**WYLY~ROMMEL, PLLC**
2311 Moores Lane
Texarkana, Texas 75503
(903) 334-8646 (Telephone)
(903) 334-8645 (Fax)


Chris Travis
Admission by *Pro Hac Vice*
Travis@gill-law.com
Drake Mann
Texas Bar No. 12929510
mann@gill-law.com

**GILL ELROD RAGON OWEN**
**& SHERMAN, P.A.**
425 West Capitol Avenue, Suite 3801
Little Rock, Arkansas 72201
(501) 376-3800 (Telephone)
(501) 372-3359 (Fax)


M. Chad Trammell
Tex. Bar No. 20183750
chad@thetrammellfirm.com

**THE TRAMMELL LAW FIRM, PLLC**
418 North State Line Avenue
Texarkana, AR 71854
(870) 779-1860 (Telephone)
(870) 779-1861 (Fax)

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2011, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case files system of the court.   The electronic case system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means.  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by first class mail on this date.

/s/ Sean F. Rommel
Sean F. Rommel