UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| KEITH DUNBAR, Individually and as Representative on Behalf of all Similarly Situated Persons, | § § § § | Civil Action No. 5:10-CV-194 |
| Plaintiff, | § § | |
| | § | CLASS ACTION COMPLAINT |
| v. | § § | |
| GOOGLE INC., | § § | |
| Defendant. | § | JURY DEMANDED |

**MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant Google Inc. files this Motion to Dismiss the First Amended Class Action Complaint (the "Amended Complaint") filed by Plaintiff Keith Dunbar ("Plaintiff") and pursuant to Local Rule CV-7(g) requests oral hearing before the Court.

## I.      INTRODUCTION

Google's "Gmail" is one of the most feature-rich and popular email services in the world. Gmail is a free service to anyone who wants it, and it is supported by advertising.  Gmail tries to make its ads useful, and unobtrusive, rather than a distraction from the work users are doing with their email.  Since April 2004, Google has delivered targeted ads by utilizing automated scanning technology.  The email is scanned for keywords which are then used to match and serve relevant advertisements for display to Gmail users who open the email messages in their inboxes.  This process is completely automated and involves no humans.

Plaintiff, who is not a Gmail user, claims ECPA[1] is violated when Google scans the contents of emails received from him by Gmail account holders.   (Amended Complaint ¶6). Plaintiff seeks to certify a nationwide class of other non-Gmail users whose emails have likewise been received by Gmail account holders.  As demonstrated below, nothing complained of by Plaintiff is actionable under the single federal statute pled.[2]

The fact that this case is brought as a putative class action is irrelevant.  Plaintiff's failure to state an ECPA claim requires dismissal.  The Fifth Circuit supports the judicial economy and

---

[1] Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. §§ 2510-2522, as amended by the Electronic Communications Privacy Act of 1986 ("ECPA").  Prior to the 1986 ECPA amendment, ECPA covered only wire and oral communications.  Title I of ECPA extended that coverage to electronic communications.  See Steve Jackson Games, Inc. v. U.S. Secret Serv., 36 F.3d 457, 460 (5th Cir. 1994).

[2] Defendant moves this Court under Fed. R. Civ. P. 12(b)(6) based on the facts stated in Plaintiff's First Amended Class Action Complaint.  See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) ("The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff.").

efficiency of dismissing class action complaints at the Rule 12(b)(6) stage.[3]  As Professor Wright explained, "[t]he court always is empowered to make a determination on the merits irrespective of the denomination of the suit as a class action . . ." <u>Floyd v. Bowen</u>, 833 F.2d 529, 534 (5th Cir. 1987) (<u>quoting</u> 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u>, § 1785 (1986)).   Here, the Court is presented with a case that warrants the exercise of its power to dismiss.

## II.    STATEMENT OF ISSUES AND GROUNDS FOR DISMISSAL

There are at least three independent grounds for dismissal of this case.

<u>First</u>, ECPA excludes from liability devices used by an electronic communications provider "in the ordinary course of its business."  18 U.S.C. § 2510(5)(a).  Google routinely – as part of its business model – scans emails for keywords which are then used to match and serve relevant advertisements for display to Gmail users when they view the email messages in their inboxes. (Am. Compl. ¶43; Ex. J).  The automated scanning is done routinely, indiscriminately and openly as part of the email service provided to all customers and is in the ordinary course of business.

<u>Second</u>, "one of the parties to the communication" – the Gmail account holder – has consented to any alleged interception, an exception under ECPA. 18 U.S.C. § 2511(2)(d). Indeed, Plaintiff recognizes that users must first agree to a Terms of Service agreement and privacy policies that include information about Google's scanning in order to open a Gmail account.  (Am. Compl. ¶24, Exs. C, D, H-J, Declaration of Carl C. Butzer, Ex. 1).

<u>Third</u>, the alleged interception is excepted from liability because the services performed by Google of matching and placing targeted ads based upon email content are "a necessary

---

[3] <u>Jacobs v. Gromatsky</u>, 494 F.2d 513, 514 (5th Cir. 1974) ("Of course, the failure of the entire claim moots the class action issue."); <u>Floyd v. Bowen</u>, 833 F.2d 529, 534 (5th Cir. 1987).

incident to the rendition" of Google's free Gmail services.  18 U.S.C. § 2511(2)(a)(i).  Indeed, providing targeted ads to account holders is a necessary and fundamental aspect of Google's aim to better serve its Gmail customers, and such ads permit Google to provide its services free of charge to more than 100 million users.

### III.    FACTS

**A.    GOOGLE OFFERS "'A BETTER WEBMAIL EXPERIENCE' THROUGH TARGETED ADVERTISING BASED UPON EMAIL CONTENT"**

Gmail is a <u>free</u> service. (Amended Complaint ¶12).[4]  That is because, like most free webmail services, Gmail is supported by advertising rather than fees paid by email users. (Terms of Service Agreement (hereafter "Terms of Service"); Amended Complaint Ex. K).  But unlike many other webmail service providers, Google does not bombard its users with distracting ads.  (Am. Compl. Ex. C).  Instead, Gmail displays ads users "might find useful that are relevant to the content of emails" (<u>Id.</u>), because Google's "goal is to provide Gmail users with ads that are useful and relevant to their interests." (Butzer Decl. Ex. 1).

The targeted advertising improves Google's services to Gmail users.  In fact, "Google sets itself apart from its competitors by offering targeted advertising based upon email content versus 'irrelevant' advertising from other webmail services" and "<u>by offering 'a better webmail experience' through targeted advertising based upon email content</u>."  (Am. Compl. Ex. K) (emphasis added).  Ads are displayed only to the Gmail account user who received the message. (<u>Id.</u>).  The Gmail filtering system automatically scans the text of the email for keywords which are then used to match and place relevant ads.  (Am. Compl. Ex. J).  For example, an email that contains "Vitamin C" might dynamically generate ads from online stores that sell vitamins.

---

[4] The facts recited herein are drawn from the Amended Complaint or from documents attached to the motion to dismiss that are central to Plaintiff's claim.  <u>See</u> <u>Lone Star Fund V</u>, 594 F.3d at 387.

Google delivers these relevant, unobtrusive ads utilizing scanning technology.  (Am. Compl. Ex. K).  This process "is completely automated and involves no humans." (<u>Id.</u>; Am. Compl. Ex. J; Butzer Decl. Ex. 1).  "No email content or other personally identifiable information [is] provided to advertisers." (Butzer Decl. Ex. 1).  As Google explains, "[a]ll email services scan your email.  They do this routinely to provide such popular features as spam filtering, virus detection, search, spellchecking, forwarding, auto-responding, flagging urgent messages, converting incoming email into mobile phone text messages, automatic saving and sorting into folders, converting text URLs to clickable links, and reading messages to the blind. These features are widely accepted, trusted, and used by hundreds of millions of people every day." (Am. Compl. Ex. K).

### B.      EVERY GMAIL USER CONSENTS TO SCANNING

"In order to obtain a Gmail account and use Google's electronic communication service . . ., a person must agree to the Google Terms of Service, the Google Program Policies, and the Google Privacy Policy." (Am. Compl. ¶17).  Google's Terms of Service and privacy policies repeatedly explain how Gmail scans emails, provide explicit notice of scanning, and require each Gmail users' agreement to scanning.  For example, the Terms of Service provides that Google's services are supported by advertising revenue and may display advertisements targeted to the content of information.  (Am. Compl. Ex. D, Terms of Service §17.1, §17.3).  It also provides that Google has the right to pre-screen, review, filter or modify any content available through Gmail's services.  (<u>Id.</u>, Terms of Service §8.1, §8.3).  Gmail account holders also agree that their data and information will be treated in accord with Google's privacy policies.  (<u>Id.</u>, Terms of Service §§7.1-7.2; <u>see also</u> Am. Compl. Ex. I).  In particular, Google's policy provides:

> Google scans the text of Gmail messages in order to filter spam and detect viruses. The Gmail filtering system also scans for keywords in users' emails which are then used to match and serve ads. The whole process is automated and

involves no humans matching ads to Gmail content.

(Am. Compl. Ex. J; <u>see also</u> Am. Compl. Exs. C, K; Butzer Decl. Ex. 1).

The scanning of emails to deliver targeted ads is disclosed as part of the bargained-for set of services between each Gmail account holder and Google. The automated scanning is done routinely and openly as part of Google's everyday business operations and for the rendition of Gmail's services. As the Terms of Service and privacy policies demonstrate, consent by Gmail account holders to the scanning of their emails is an integral and agreed upon part of Google's free Gmail service.

## IV.    THE MOTION TO DISMISS SHOULD BE GRANTED

To survive this Motion to Dismiss, Plaintiff must plead facts sufficient to 'state a claim to relief that is plausible on its face.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007) (citation omitted); <u>Bustos v. Martini Club Inc.</u>, 599 F.3d 458, 461 (5th Cir. 2010). Plaintiff must plead "factual content that allows the court to draw the reasonable inference that [Google] is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quotations omitted); <u>see also</u> <u>In re Great Lakes Dredge & Dock Co.</u>, 624 F.3d 201, 210 (5th Cir. 2010). This means the Amended Complaint must contain more than "bald allegations" or a "formulaic recitation of the elements." <u>Ashcroft</u>, 556 U.S. at ___, 129 S.Ct. at 1949-1951.

It is not enough that the alleged facts are "merely consistent with" Google's liability; they must actually make Plaintiff's entitlement to relief "plausible." <u>Ashcroft</u>, 556 U.S. at ____, 129 S.Ct. at 1949; <u>Brewster v. Dretke</u>, 587 F.3d 764, 770 (5th Cir. 2009) (affirming dismissal because the facts alleged by the plaintiff "do not permit the court to infer more than there mere possibility of misconduct."). It is also well-settled that "dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." <u>Dommert v.</u>

Raymond James Fin. Serv., No. 1:06-CV-102, 2007 WL 1018234, at *5 (E.D. Tex. Mar. 29, 2007) (Folsom, J.) (citation omitted).

The Amended Complaint alleges Google violates 18 U.S.C. §§ 2511(1)(a) & (1)(d) when it scans the content of Plaintiff's email "to sell and place advertisements" to Gmail users. (Amended Complaint ¶10).  Section 2511(1)(a) imposes liability on a person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."  Section 2511(1)(d) imposes liability on a person who "intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection."  As explained below, there are at least three grounds for dismissal that are apparent from the face of the Amended Complaint – any one of which is sufficient to warrant the dismissal of this case. See Twombly, 550 U.S. at 564-70 (dismissing on 12(b)(6) grounds a class action where the complaint failed to assert facts sufficient to state a claim for relief "plausible on its face.").

### A. SCANNING IN THE ORDINARY COURSE OF BUSINESS IS NOT A DEVICE AND IS EXCLUDED FROM LIABILITY UNDER ECPA

"[I]n order to state a claim under the Wiretap Act, a plaintiff must allege that a communication was intentionally intercepted through the use of a device." Conte v. Newsday, Inc., 703 F. Supp. 2d 126, 139 (E.D.N.Y. 2010) (citation omitted); Healix Infusion Therapy, Inc. v. Helix Health, LLC, --- F.Supp.2d ----, No. H-09-2072, 2010 WL 3909481, *9 (S.D. Tex. Sept. 30, 2010) (finding no violation of ECPA because defendant did not use a device); see also 18 U.S.C. § 2510(4).  ECPA provides an ordinary course of business exclusion within its definition of "any electronic, mechanical, or other device" that applies to Google.  Specifically, an "electronic, mechanical, or other device" means a device other than:

> (a)    Any telephone or telegraph instrument, equipment or facility, or any component thereof, . . . (ii) being used by a provider of . . . electronic communication service <u>in the ordinary course of its business</u> . . .

18 U.S.C. § 2510(5)(a)(ii) (emphasis added).   Google's scanning is part of the email service provided to all customers and is in the ordinary course of business.   Accordingly, Google's filtering technology is not a "device" under ECPA.

The ordinary course of business exclusion is applicable to Google's Gmail services. First, courts interpret "electronic communication service" under § 2510(5)(a)(ii) broadly to include telephone companies, ISPs, email service providers, and bulletin board systems ("BBS"). <u>See</u> <u>U.S. v. Steiger</u>, 318 F.3d 1039, 1049 (11th Cir. 2003) (finding electronic communication service provider includes a phone company, an ISP or a BBS); <u>Steve Jackson Games</u>, 36 F.3d at 462-63 (finding a BBS is an electronic communication service); <u>Becker v. Toca</u>, No. 07-7202, 2008 WL 4443050, *4 (E.D. La. Sept. 26, 2008) (finding "an online business or retailer may be considered an electronic communication service provider if the business has a website that offers customers the ability to send messages or communications to third parties.").   Moreover, in the Amended Complaint, Plaintiff refers to Gmail as "Google's electronic communication service." (Am. Compl. ¶17).   Thus, Google's Gmail service, which provides users the ability to send and receive emails, is plainly a "provider of . . . electronic communication service."   <u>Steiger</u>, 318 F.3d at 1049.

The first prong of 18 U.S.C. § 2510(5)(a)(ii) also applies here, namely Google's Gmail uses "[a]ny telephone or telegraph instrument, equipment or facility, or any component thereof." Under <u>Hall v. EarthLink Network, Inc.</u>, 396 F.3d 500 (2d Cir. 2005), Gmail is "using any equipment or facility."   396 F.3d at 504.   In addition, Google's Gmail service qualifies as "telegraph equipment" under § 2510(5).   Although ECPA does not define "telegraph," a dictionary broadly defines the term as "an apparatus for communication at a distance by coded

signals." <u>Merriam-Webster's Online Dictionary</u> (10th Ed.), http://www.merriam-webster.com/. Similarly, an email message is converted to binary code, then sent to its destination as a coded signal.  Thus, Google's technology is telegraph equipment or "any equipment or facility" under § 2510(5)(a)(ii), and accordingly, the ordinary course of business exclusion applies to Google.

Further, Google's Gmail services meet the ordinary course of business exclusion.  Courts hold that an activity is in the ordinary course of business if it is completed routinely, indiscriminately and with a business purpose.  <u>See, e.g.,</u> <u>Norwood v. City of Hammond</u>, No. 99-879, 2000 WL 158455, *2 (E.D. La. Feb. 10, 2000); <u>see also</u> <u>Hall</u>, 396 F.3d at 505 (holding no interception because EarthLink's activity was part of "its email service to all customers" in the "ordinary course of its business").  Here, the Amended Complaint and attached exhibits set out facts that affirmatively establish that Google's scanning is excluded from "device" under Section 2510(5)(a)(ii).  Plaintiff attaches a publicly available document to his Amended Complaint that states "Google scans the text of Gmail messages in order to filter spam and detect viruses, just as all major webmail services do.  Google also uses this scanning technology to deliver targeted text ads and other related information.  This is completely automated and involves no humans." (Am. Compl. Ex. K; <u>see also</u> Butzer Decl. Ex. 1).  The Amended Complaint references a number of other publicly available documents that provide repeated notice of Gmail's routine scanning of emails.  (Am. Compl. Exs. C, D, H-J).  These documents, not to mention Google's Gmail privacy policy regarding email scanning, have been well-known and on the Internet for many years.  Thus, Google's filtering and matching of targeted ads to a Gmail user's email is an activity conducted in the ordinary course of business.  On this independent basis, dismissal is appropriate.

**B.    EVEN IF PLAINTIFF PROPERLY ALLEGED THE ELEMENTS OF AN INTERCEPTION, ANY ALLEGED INTERCEPTION FALLS WITHIN AN EXPLICIT EXCEPTION UNDER ECPA**

**1.    The Alleged Interception Is Lawful Because the Gmail Account Holder Consents**

Plaintiff's Amended Complaint suffers from another fatal defect.  There is no violation of ECPA when the interception occurs with the consent of just <u>one</u> of the parties to the communication.  18 U.S.C. § 2511(2)(d).  ECPA provides:

> It shall <u>not</u> be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or <u>where one of the parties to the communication has given prior consent to such interception</u> unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

<u>Id.</u> (emphasis added).  "Congress intended the consent requirement to be construed broadly." <u>U.S. v. Amen</u>, 831 F.2d 373, 378 (2d Cir. 1987).  And the Fifth Circuit has not hesitated to affirm dismissals on the ground of one-party consent.  <u>In re Vistaprint Corp. Mkt. & Sales Pracs. Litig.</u>, No. 4:08-md-1994, 2009 WL 2884727, at *9 (S.D. Tex. Aug. 31, 2009), <u>aff'd</u>, 392 Fed. App'x 327 (5th Cir. Aug. 23, 2010) (granting motion to dismiss ECPA claim based on consent).

Although consent may be implied from notice of the interception, <u>Amati v. City of Woodstock</u>, 176 F.3d 952, 955 (7th Cir. 1999), here the consent is explicit from the unambiguous language agreed to by every Gmail user.[5]  As Plaintiff notes, in order to even open a Gmail account, a person must agree to the Google Terms of Service, Program Policy and Privacy Policy.  (Am. Compl. ¶17; Terms of Service ¶2.1).  When a Gmail user sets up her account, Google states that "we display ads you might find useful that are relevant to the content

---

[5] Plaintiff's bare allegation that Gmail users have not consented is not enough to prevent dismissal of his claims.  The mere use of words, does not make it so.  Instead, this is nothing more than a "threadbare recital[ ] of a cause of action's elements, supported by mere conclusory statements." <u>Iqbal</u>, 129 S.Ct. at 1940 (quoting <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. 1955).

of your messages. <u>Learn more</u>." (<u>Id.</u>, Ex. C).  When a user clicks on "<u>Learn more</u>," Google explains that "[i]n Gmail, ads are related to the content of your messages," and "[a]d targeting in Gmail is fully automated, and no humans read your email in order to target advertisements or related information." (Butzer Decl. Ex. 1).  The Terms of Service states that emails may be pre-screened, reviewed, filtered, or modified by Google.  (Terms of Service ¶8.3).  In addition, the Terms of Service provides that advertisements support Gmail services, that such ads may be targeted to the content of emails, and the Gmail user agrees "Google may place such advertising" as consideration for granting access to and use of Gmail.  (Terms of Service ¶17.1, ¶17.3).

The Terms of Service also provides that Gmail users agree to the use of the account holders' "data in accordance with Google's privacy policies" and provides a link to those policies.  (Terms of Service ¶7.2).  The privacy policies include an advertising link that explains: "Google scans the text of Gmail messages in order to filter spam and detect viruses.  <u>The Gmail filtering system also scans for keywords in users' emails which are then used to match and serve ads</u>." (Am. Compl. Ex. J) (emphasis added).

Thus, Gmail account holders explicitly agree to Google's Terms of Service and privacy policies.  As a matter of law, such agreements are plainly sufficient to fall within the consent exception of ECPA.  <u>In re Vistaprint Corp.</u>, 2009 WL 2884727, at *9.  This also was the very basis for dismissal in <u>Mortensen v. Bresnan Communication, LLC</u>, No. 10-13-BLG-RFC, 2010 WL 5140454, at *3-5 (D. Mont. Dec. 13, 2010).  There, the district court granted a 12(b)(6) motion dismissing a class action complaint alleging ECPA violations against an electronic communications provider based on its users' consent in the account agreement, privacy policy, and other posted notices.  <u>Id.</u>  Likewise, courts closer to home have reached the same result.  <u>See also</u> <u>Borninski v. Williamson</u>, No. 3:02CV1014-L, 2005 WL 1206872, at *12-13 (N.D. Tex.

May 17, 2005) (finding no ECPA violation because plaintiff signed the defendant's "Application for Internet Access" and therefore expressly consented to defendant's monitoring of his communications).

Moreover, Plaintiff's allegations that he, as a non-Gmail account user, did not also consent are irrelevant and do not prevent dismissal.  To begin with, the statute only requires "one of the parties to the communication" to have given prior consent. 18 U.S.C. § 2511(2)(d).  Further, similar allegations were advanced and summarily dismissed in a directly analogous case.  See In re DoubleClick Inc. Privacy Litig., 154 F. Supp. 2d 497, 514 (S.D.N.Y. 2001).   In DoubleClick, the court dismissed under Rule 12(b)(6) a putative class action alleging ECPA violations based on the consent provided to defendant DoubleClick by DoubleClick-affiliated websites.  Id.  The DoubleClick-affiliated websites were the receiving parties to the plaintiffs' intercepted communications, and therefore, the one-party consent requirement of § 2511(2)(d) was met.  Id.  This consent was effective against the plaintiff in DoubleClick who had not consented.  Id.  Similarly, Google here obtained the consent of Gmail account holders who, in turn, are the receiving parties to Plaintiff's allegedly intercepted emails.  Thus, any alleged interception was with the consent of one party to the communication and Plaintiff's alleged lack of consent is irrelevant under the explicit language of the statute.  Id.  Accordingly, the alleged interception is "not … unlawful" under ECPA and the Amended Complaint should be dismissed.  Id.; see also In re Vistaprint, 2009 WL 2884727, at *9.[6]

---

[6] Defendant acknowledges that consent precludes ECPA liability "unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).  Here, Plaintiff's Amended Complaint does not allege that the "unless clause" applies.  However, even if he did, it is inapplicable.  The unless clause is construed narrowly.  DoubleClick, 154 F. Supp. 2d at 515; U.S. v. Turk, 526 F.2d 654, 657 n.1 (5th Cir. 1976).  Moreover, courts recognize that a "highly-publicized market-financed business model in pursuit of commercial gain" is not within the "unless" clause of Section 2511(2)(d).  DoubleClick, 154 F. Supp. 2d at 518.

### 2. The Alleged Interception Is Lawful Because It Is a Necessary Incident to the Rendition of Free Gmail Services

ECPA also excepts from liability any activities that might otherwise qualify as an interception under ECPA when they are a "necessary incident" to the rendition of services by a provider of electronic communication services.  18 U.S.C. § 2511(2)(a)(i).  Specifically, § 2511(2)(a)(i) provides that

> It shall not be unlawful . . . to intercept, disclose, or use that [electronic] communication in the normal course of his employment <u>while engaged in any activity which is a necessary incident to the rendition of his service</u> or to the protection of the rights or property of the provider of that service, <u>except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.</u>

18 U.S.C. § 2511(2)(a)(i) (emphasis added).  The two underlined passages identify the key provisions.

First, the exception under § 2511(2)(a)(i) is for an alleged "interception" that is a "necessary incident" to the services rendered.  Plaintiff's Amended Complaint establishes scanning is a necessary incident to Google's ability to provide Gmail services to its users.  With Gmail, users will not see distracting ads.  (Am. Compl. Ex. C).  Instead, Gmail displays ads users "might find useful that are relevant to the content of emails" (<u>Id.</u>; Am. Compl. Ex. K), and Google's "goal is to provide Gmail users with ads that are useful and relevant to their interests." (Butzer Decl. Ex. 1).  To serve such relevant, targeted ads, Google must scan the text of Gmail account holders' messages.  (Am. Compl. Ex. K).  "Google sets itself apart from its competitors by offering 'a better webmail experience' through targeted advertising based upon email content."  (<u>Id.</u>).  Courts have found that a provider's efforts to increase the quality of the services provided "fall squarely within the language of the exception."  <u>See</u> <u>U.S. v. Ross</u>, 713 F.2d 389, 392 (8th Cir. 1983) (finding monitoring of telephone conversation to check the service quality of the line was a necessary incident to the rendition of the service); <u>see also</u> <u>Freedom Calls</u>

Foundation v. Bukstel, No. 05-CV-5460, 2006 WL 845509, *27 (E.D.N.Y. Mar. 3, 2006). Accordingly, Google's Gmail services include not only the provision of sending and receiving emails, but also the quality of those services.  (Am. Compl. Exs. C, K; Butzer Decl. Ex. 1). Thus, Google's scanning is a necessary incident to the rendition of Gmail services not only because targeted ads are part of the very services delivered, but also because it is the means by which the <u>free</u> rendition of those services are "paid for."

The second part of § 2511(2)(a)(i) prevents random monitoring of communications, and is only applied to wire communication providers, <u>not</u> to electronic communication providers. This reflects an "important technical distinction" from traditional voice telephone service because an electronic communications service provider's monitoring functions

<u>do not involve humans listening in on voice conversations. Accordingly, they are not prohibited</u>. In contrast, the traditional limits on service 'observing' and random 'monitoring' do refer to human aural interceptions and are retained with respect to voice or 'wire' communications.

S. Rep. No. 99-541, at 19 (1986), <u>reprinted in</u> 1986 U.S.C.C.A.N. 3555, 3574 (emphasis added). Here, as contemplated by Congress, Google's scanning and matching process to deliver ads is completely automated and involves no humans.  (Am. Compl. ¶49; Exs. J, K; Butzer Decl. Ex. 1).  Thus, Google's scanning of emails for viruses, to deliver relevant ads and otherwise manage emails are squarely within the "necessary incident" exception.  18 U.S.C. § 2511(2)(a)(i).

## V.     CONCLUSION

Plaintiff has not met his burden of alleging facts sufficient to state a plausible claim for a ECPA violation.   To the contrary, Plaintiff affirmatively pleads facts that actually preclude finding a violation of the statute and which demonstrate that (1) there is no "device," because Google scans are performed "in the ordinary course of business," (2) any alleged interception is not unlawful because Google has the consent of one party – Gmail users, and (3) any alleged

interception is exempted because Google's actions are a necessary incident to the delivery of its free Gmail services.  For each of the reasons set forth above, Google is not liable under ECPA and this action should be dismissed without leave to amend.

      Respectfully submitted,

      /s/ Charles L. Babcock
      Charles L. "Chip" Babcock, Lead Attorney
      Texas State Bar No. 01479500
      David T. Moran
      Texas State Bar No. 14419400
      Carl C. Butzer
      Texas State Bar No. 03545900
      Shannon Zmud Teicher
      Texas State Bar No. 24047169
      JACKSON WALKER L.L.P.
      901 Main Street, Suite 6000
      Dallas, Texas  75202
      (214) 953-6000
      (214) 953-5822 - Fax
      Email: cbabcock@jw.com

      George L. McWilliams
      Texas State Bar No. 13877000
      Law Office of George L. McWilliams, P.C.
      Post Office Box 58
      Texarkana, Texas-Arkansas 75504
      (870) 772-2055
      (870) 772-0513 – Fax
      Email: glmlawoffice@gmail.com

      ATTORNEYS FOR DEFENDANT
      GOOGLE INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2011, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means.  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by first class mail today, March 10, 2011.

/s/ Charles L. Babcock
Charles L. Babcock